1

2   MERKLE SIEGEL & FRIEDRICHSEN,
    P.C.                                          THE HONORABLE
3   1325 Fourth Ave., Suite 940                   JOHN C. COUGHENOUR
    Seattle, Washington 98101-2509
4   Phone (206)-624-9392
    Fax (206) 624-0717
5

6

7                  IN THE UNITED STATES DISTRICT COURT
8           FOR THE WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
9

10  **JAMES S. GORDON, Jr., a married**        NO.  CV06-0204JCC
    **individual, d/b/a**
11  **'GORDONWORKS.COM';**                     **PLAINTIFF'S RESPONSE IN OPPOSITION**
                                               **TO DEFENDANTS' MOTION TO DISMISS**
12  **Plaintiff,**
                                               **[Hearing Noted Without Oral Argument for**
13                                             **April 7, 2006]**
    v.
14
    **VIRTUMUNDO, INC, a Delaware**
15  **corporation, d/b/a**
    **ADNOWLEDGEMAIL.COM;**
16  **ADKNOWLEDGE, INC., a Delaware**          **[JURY DEMANDED]**
    **corporation, d/b/a**
17  **ADKNOWLEDGEMAIL.COM;**
    **SCOTT LYNN, an individual; and**
18  **JOHN DOES, I-X,**

19
    **Defendants,**
20

21  Plaintiff James S. Gordon, Jr., by and through his attorney of record, responds to Defendants'
22
    Motion To Dismiss as follows:
23

24

25

26
    PLAINTIFF'S RESPONSE IN          Page 1 of 19    MERKLE SIEGEL & FRIEDRICHSEN, P.C.
27  OPPOSITION TO                                        1325 Fourth Ave., Suite 940
                                                          Seattle, WA 98101-2509
28  12 (b)(2) MOTION TO DISMISS -1                        Phone: 206-624-9392
    GORDON v. VIRTUMUNDO, INC., ET                         Fax: 206-624-0717
    AL

Dockets.Justia.com

I.    **Introduction**

Defendants seek to dismiss Plaintiff's Complaint against them, claiming lack of personal jurisdiction pursuant to CR 12(b)(2). Plaintiff asserts that personal jurisdiction clearly attaches to Defendant in the State of Washington. To hold differently would effectively eviscerate the Washington CEMA (RCW 19.190 et seq.) by preventing Washington citizens as well as the State Attorney General from applying the State's anti-spam laws to out-of-state spammers, such as Defendant here.

This case illustrates the evolving nature of the law of personal jurisdiction in response to new developments in technology. The trend in recent years has become quite clear, indicating that courts around the country, and in particular Washington courts, both state and federal, have been holding in favor of personal jurisdiction in cases involving contacts, including commercial emails, via the internet. (See Declaration of Robert J. Siegel and decisions attached thereto, including: two decisions by this Court, Judge Thomas Zilly at Exhibit "A"; two recent decisions from the U.S. Eastern District court of Washington at Exhibit "B"; a motion and decision from the Washington Superior Court For King County, Judge Hilyer, denying a similar motion to dismiss by this same Defendant, Virtumundo, as Exhibit "C").   Defendants' arguments are wholly without merit.

**Facts**

(For a complete statement of the facts discussed herein *See Subjoined Declaration of James S. Gordon, Jr.*)

On September 8, 2003, Plaintiff Gordon received a commercial email from Defendant Virtumundo with the subject line "NFL Sunday Ticket and 4 Free Months of DirecTV"

PLAINTIFF'S RESPONSE IN OPPOSITION TO 12 (b)(2) MOTION TO DISMISS -2 GORDON v. VIRTUMUNDO, INC., ET AL

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

1   purportedly advertising satellite television subscriptions for sale over the internet, and

2   containing, in fine print, the misrepresentation that "You received this email because you signed

3   up at one of Virtumundo's websites…", an allegation that Plaintiff wholly denies. This email

4   was sent to his "james@gordonworks.com" email address, at his domain Gordonworks.com.

5       Mr. Gordon, as he routinely does, replied to the email and informed Defendants that he

6   was a Washington State resident, and to cease and desist sending any further email.

7   Subsequently, and incredibly, Mr. Gordon received over 6,000 more emails from Defendants at

8   this email address, transmitted to and through his interactive computer service, and through his

9   LLC's domain server.  (Mr. Gordon's LLC, Omni Innovations, LLC has been added as a party

10  plaintiff to this lawsuit by the filing of a First Amended Complaint concurrently herewith, a copy

11  of which is attached to the subjoined Declaration of Robert J. Siegel).

12      Many of the offending emails contained a statement claiming that he had "subscribed" to

13  receive commercial email, and that if he did nothing further, he would begin receiving more

14  commercial email from Virtumundo.   In response, Mr. Gordon sent an email to Virtumundo,

15  informing it that he was a Washington State resident, that the email was in violation of RCW

16  19.190 and RCW 19.86, and requested that Virtumundo cease and desist sending all email, either

17  sent by Virtumundo or by anyone else on its behalf.  The email also included a list of all email

18  addresses owned by Mr. Gordon, and specified that if Virtumundo continued sending him email,

19  it agreed to submit itself to the jurisdiction and venue of the courts of Washington.  This email

20  did not "bounce," indicating that Virtumundo received the email.

21      Mr. Gordon subsequently sent numerous other cease and desist emails to Virtumundo,

22  including the same message, literally thousands of times!  Despite the repeated notices and

23

24

25

26  PLAINTIFF'S RESPONSE IN

27  OPPOSITION TO
    12 (b)(2) MOTION TO DISMISS -3

28  GORDON v. VIRTUMUNDO, INC., ET
    AL

Page 3 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

1   warnings sent to Defendants, instead of ceasing and desisting its commercial email campaign to

2   Mr. Gordon as he requested, Virtumundo continued to send email after email to him, advertising

3   a wide array of products and services. *See Declaration of James Gordon.*   The notices sent by

4   Mr. Gordon to Defendants were much clearer and specific than would be a questionable request

5   to "unsubscribe"[1].

6

7       After his numerous attempts failed to stop the flow of unsolicited email from Defendants,

8   Mr. Gordon served Defendants with this lawsuit.

9       As is apparent from the declarations submitted in support of Defendants' Motion, and

10  notwithstanding the objectionable nature of same, Defendants admit to selling goods and services

11  through commercial email transmitted through the internet, and nowhere do they flatly deny that

12  Plaintiff received the emails in question from them.  Nonetheless, Defendants make the untenable

13  claim that they have not subjected themselves to the jurisdiction of the Washington courts

14  because they do not have the requisite "minimal contacts" with this State, and/or "purposeful

15  availment" on their behalf cannot be established.  Plaintiff submits that, in light of the well-

16  established law in this area, as set forth below, such a position is specious, and borders on the

17

18  frivolous!

19              **II.      Argument and Authority**

20          **A.  The Court Should Consider Only Plaintiff's Factual Allegations.**

21      When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without

22

23  holding an evidentiary hearing, the plaintiff need make only a prima facie showing of

24  _____

    [1] Plaintiff notes that the use of the term "unsubscribe" implies that he "subscribed" to receive
25  unlawful email in the first place, which Mr. Gordon categorically denies having done.

26                                              MERKLE SIEGEL & FRIEDRICHSEN, P.C.
                                                    1325 Fourth Ave., Suite 940
                         Page 4 of 19                  Seattle, WA 98101-2509
    PLAINTIFF'S RESPONSE IN                            Phone: 206-624-9392
27  OPPOSITION TO                                        Fax: 206-624-0717
    12 (b)(2) MOTION TO DISMISS -4
28  GORDON v. VIRTUMUNDO, INC., ET
    AL

jurisdictional facts to withstand the motion to dismiss. <u>Ballard v. Savage, et al.</u>, 65 F.3d 1495 (1995). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." <u>Id</u>, citing <u>Data Disc, Inc. v. Systems Technology Assos.</u>, 557 F.2d 1280, 1285 (9th Cir. 1977). The facts are viewed in the light most favorable to the Plaintiffs. <u>Compuserve Inc. v Patterson</u>, 89 F.3d 1257, 1262, (6th Cir. 1996), citing <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1458 (6th Cir. 1991). "Furthermore, a 'court disposing of a 12(b)(2) motion *does not weigh* the controverting assertions of the party seeking dismissal,' … because we want 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.' <u>Id</u> at 1459 (emphasis added). Dismissal in this procedural posture is proper only if *all* the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. <u>Id</u>.  Unless directly controverted, the plaintiff's version of the facts is taken as true. <u>Doe v. Unocal, Corp.</u>, 248 F. 3d 915, 922 (9th Cir. 2001). Conflicts in the evidence set forth in the parties' affidavits must be resolved in the plaintiff's favor. <u>Id</u>. Here, Plaintiff has clearly met his burden, and Defendant's Motion should be dismissed.

**B.    The Statements Of Defendants' Corporate Counsel Should Be Stricken And/Or Ignored.**    It likely has not gone unnoticed by the Court that the only sworn statements submitted on behalf of both defendants are not from corporate officers, but rather from their respective corporate counsel, Messrs. Geroe and Brandt.  Notwithstanding the highly unusual, and unreliable nature of such testimony, the Court should take particular notice of the fact that nowhere in the Defendants' brief (nor in the sworn statement of Defendant Virtumundo's corporate counsel) does the Defendant ever deny sending spam to Mr. Gordon.  This omission is

PLAINTIFF'S RESPONSE IN
OPPOSITION TO
12 (b)(2) MOTION TO DISMISS -5
GORDON v. VIRTUMUNDO, INC., ET AL

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

1   particularly telling given the fact that the entire basis of the Plaintiff's complaint is the allegation

2   that the Defendant sent thousands of unsolicited, and otherwise unlawful emails to Mr. Gordon.

3   Instead, the Defendant's counsel simply ignores the issue, essentially arguing that "there was no

4   intentional contact by Defendant with anyone in Washington State", and that they, Defendants,

5   intentionally don't target Washington residents (while claiming they can't ascertain the actual

6   location of the email addresses they regularly send commercial emails to), as if the thousands of

7   Defendant's illegal spams were not "contacts", and were not "intentional".

8

9       As this Court is well aware, _intent has nothing to do with the issue, and is nowhere

10  required in order to violate the Washington CEMA_.  The sworn testimony of the Defendant's

11  corporate counsel is also glaringly equivocal, admitting that a certain amount of their revenue is

12  indeed derived from transactions/sales in Washington, while disingenuously attempting to

13  minimize that admission by stating an unsupported, and uncertified revenue figure completely out

14  of context, i.e., the actual dollar amounts derived from Washington transactions. Thus, we have

15  no way to know just how many dollars .04%, and .16% of Defendants' revenue these percentages

16  actually represent.  Nonetheless, for these purposes, it matters not whether these numbers

17  represent millions of dollars, or mere pennies.  Neither Defendants' _intent_ nor their revenue is

18  relevant to the determination of whether this Court may exercise personal jurisdiction over them.

19      Notwithstanding the foregoing, Plaintiff moves this Court to ignore the factual allegations

20  made by "_Defendant's Motion_" and strike the allegations contained within the attached affidavits

21  upon which its entire motion is necessarily, albeit improperly, founded, and consider only the

22  collective claims made by Plaintiff: here, in the subjoined Declarations, attached exhibits, and in

23  his Complaint and First Amended Complaint.

24

25

26  PLAINTIFF'S RESPONSE IN
    OPPOSITION TO
27  12 (b)(2) MOTION TO DISMISS -6
    GORDON v. VIRTUMUNDO, INC., ET
28  AL

Page 6 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

C.    **Plaintiff's Prima Facie Facts Clearly Support Personal Jurisdiction.**

In Washington, a traditional analysis of jurisdiction under its long-arm statute involves two separate issues: (1) does the statutory language purport to extend jurisdiction, and (2) would imposing jurisdiction violate constitutional principles.  <u>Grange Insurance Association v. Washington</u>, 110 Wn.2d 752, 757 P.2d 933 (1988), citing Werner <u>v. Werner</u>, 84 Wn.2d 360, 364, 526 P.2d 370 (1974).

1. **Statutory authority**

Plaintiff alleges that the Defendant engaged in conduct in violation of RCW 19.190 et seq., the Washington Commercial Electronic Mail Act (CEMA).  Long arm jurisdiction under this act is specifically granted under RCW 3.66.020.  Plaintiff's First Amended Complaint also adds allegations and causes of action under: The Federal Can-Spam Act of 2003, 15 U.S.C. §7701, *et seq;* the Washington State Identity Crimes Act, RCW 9.35 et seq.; the Washington Deceptive Offers Act, RCW 19.170 et seq.; and for Injunctive Relief.

Further statutory authority is granted pursuant to RCW 19.86, which provides that violations of the CEMA statute constitute *per-se violations* of the Consumer Protection Act.  Under RCW 19.86.160, persons who fall within the service provisions of the CPA are "deemed to have thereby submitted themselves to the jurisdiction of the courts of this state within the meaning of RCW 4.28.180 and RCW 4.28.185."

Thus, Washington's long arm statute clearly extends jurisdiction over the Defendant through the Consumer Protection Act. (*See* <u>State v. Readers Digest Association</u>, 81 Wn. 2d 259, 277 (1991), which held that the performance of an unfair trade practice in Washington, even

PLAINTIFF'S RESPONSE IN OPPOSITION TO 12 (b)(2) MOTION TO DISMISS -7 GORDON v. VIRTUMUNDO, INC., ET AL

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

though by a foreign corporation which had no agents, employees, offices or property in the state, was *alone* sufficient to establish jurisdiction.)

Further statutory authority is extended by RCW 4.28.185(b), which extends jurisdiction over persons who commit tortious acts in Washington. Federal Courts have ruled that sending unsolicited email constitutes the common law tort of trespass to chattels. America Online Inc. v. LCGM Inc., 46 F. Supp. 2d 444, 451-452 (E.D. VA, 1998). Washington State courts have ruled that deceptive acts of consumer fraud of the type addressed under the CPA may constitute "tortious" acts for the purposes of extending long-arm jurisdiction over an out of state defendant. Authority is also extended by RCW 4.28.185(a), which extends jurisdiction over any person who transacts business within this state. Further, in addition to the many thousands of unlawful commercial email solicitations received by Plaintiff, it is expected that discovery will reveal the extent of Defendants' true business transactions in this State, and will show substantial sales that Defendants have made in the State of Washington. (Defendants have already admitted that they do transact business on the internet in this State by virtue of statements contained in their supporting Affidavits indicating that a percentage of their sales, albeit an unspecified amount, are to Washington residents).

### 2. **Due process**

The Ninth Circuit employs a three-part test to determine if a district court can exercise specific jurisdiction:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be

PLAINTIFF'S RESPONSE IN OPPOSITION TO 12 (b)(2) MOTION TO DISMISS -8 GORDON v. VIRTUMUNDO, INC., ET AL

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

1    reasonable.

2    Panavision v. Toeppen, 141 F.3d 1316, 1320 (1998).

3

4         (a)    **The First Element - Purposeful Availment.**

5         The purposeful availment requirement ensures that a nonresident defendant will not be

6
7    hauled into court based upon "random, fortuitous or attenuated" contacts with the forum state.

8    Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

9    This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state.

10   Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).  "Fulfilling this step is not necessarily

11   precluded by a lack of physical contacts with the forum. Rather, 'within the rubric of 'purposeful

12   availment' the [Supreme] Court has allowed the exercise of jurisdiction over a defendant whose

13
14   only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the

15   forum state.'"  Core-Vent Corp. v. Nobel Industries, 11 F.3d 1482,1485, (1993), citing Haisten v.

16   Grass Valley Medical Reimbursement Fund, 784 F.2d 1392, 1397 (9th Cir. 1986). The "effects

17   test" was established in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) in

18   which the Supreme Court held that the inquiry into whether a defendant purposefully availed

19   itself on the forum state slightly shifts when the application turns on a tort claim.

20        Defendant relies heavily on Cybersell v. Cybersell, 130 F.3d 414 (1997) arguing that

21   somehow the purposeful transmission of thousands (and likely millions) of commercial emails is

22   the equivalent of operating a passive advertisement on a website (the act in question in

23   Cybersell).  While passive internet advertising alone may not be sufficient to subject a party to

24   jurisdiction in another state, when that party "purposefully (albeit electronically) directed his

25

26   PLAINTIFF'S RESPONSE IN
27   OPPOSITION TO
     12 (b)(2) MOTION TO DISMISS -9
28   GORDON v. VIRTUMUNDO, INC., ET
     AL

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

1   activity to the forum state," such is considered "something more" and sufficient to satisfy the

2   purposeful availment requirement. Panavision, at 1321, citing Cybersell Inc. v. Cybersell Inc.,

3   130 F.3d 414 (9th Cir. 1997), and cases attached in Exhibit "A". Numerous courts have found

4   that email is in fact just such a "purposeful" act, as the sender must affirmatively enter the

5   recipients address into a program, formulate a message, and direct the message to the targeted

6   address by pushing a "send" button, or by affirmatively and purposefully programming specific

7   software to accomplish those acts.

8

9          In any event, Defendant's ownership and operation of a website advertising its spamming

10  abilities is not alleged as the basis for jurisdiction here.  It makes no difference whatsoever

11  whether Defendants' websites are "active" or "passive," or whether Defendants even operate a

12  website at all.  It is the intentional and purposeful direction of thousands of emails to Plaintiff,

13  particularly after repeated, direct notices to cease and desist that constitutes purposeful availment

14  here.

15

16         The fact that Mr. Gordon gave direct notice to Virtumundo to cease and desist is further

17  dispositive here.  The U. S. Supreme Court has held in the context of junk mail that a mailer's

18  right to communicate is circumscribed by an affirmative act of the addressee giving notice that he

19  wishes no further mailings from that mailer.  Rowan v. U.S.P.S., 397 U.S. 728, 737, 90 S. Ct.

20  1484, 25 L. Ed. 2d 736 (1970).  They noted the importance of the long held right of "a

21  householder to bar, by order or notice, solicitors, hawkers, and peddlers from his property." Id,

22  citing Hall v. Commonwealth, 188 Va. 72, 49 S. E. 2d 369, appeal dismissed, 335 U.S. 875

23  (1948).  Chief Justice Burger in his opinion stated:

24

25

26  PLAINTIFF'S RESPONSE IN                           Page 10 of 19
27  OPPOSITION TO
    12 (b)(2) MOTION TO DISMISS -10
28  GORDON v. VIRTUMUNDO, INC., ET
    AL

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717