> "We therefore categorically reject the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another. If this prohibition operates to impede the flow of even valid ideas, the answer is that no one has a right to press even "good" ideas on an unwilling recipient. ... The asserted right of a mailer, we repeat, stops at the outer boundary of every person's domain."

*Rowan*, at 738.

(Although difficult to understand why, Defendants cite to a recent case decided by the Supreme Court of Utah, <u>Fenn v. Mleads Enterprises, Inc.,</u> 2006 UT 8; 545 Utah Adv. Rep. 7. Reliance on this case is patently misplaced for several reasons. First, that case involved a Utah citizen, Ms. Fenn, who sought to sue a notorious spammer under Utah's anti-spam statute, which it should be noted is glaringly less aggressive in its scope and intent than the Washington CEMA. That case involved the sending of only one (1) single email by defendant there, unlike the thousands received by Plaintiff here. And further, there was no allegation in that case that the Plaintiff specifically, and repeatedly (thousands of times) demanded that defendant cease and desist from sending further emails, nor did she apparently notify that defendant of her address and residency in Utah, as Plaintiff also did repeatedly in the instant case. The Utah court focused there on the paucity of evidence, i.e., only one (1) single email, and the fact that there was no "interactivity", to establish the requisite minimum contacts, i.e., "plaintiff never responded to the email nor did she contact Mleads through any other means." stating: "Although the possibility existed for an exchange to occur, because it did not, these facts fall under the type of interactive activity for which the exercise of personal jurisdiction is improper," id at p. 5. Thus, even the Utah court left open the possibility of finding personal jurisdiction over a spammer defendant where, as here, the interactive activity factor was satisfied. Further distinguishing *Fenn* from the instant case, the Washington CEMA includes a presumption that senders of commercial emails

PLAINTIFF'S RESPONSE IN OPPOSITION TO
12 (b)(2) MOTION TO DISMISS -11
GORDON v. VIRTUMUNDO, INC., ET AL

Page 11 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

have knowledge of their recipients' state of residence if this information is available from the domain owner of the email address, which is the case here with plaintiff Gordon's domain and email addresses. Of course, this alleged fact by Mr. Gordon must be assumed to be true under a CR 12(B)(2) analysis, and thus, contrary to its self-serving protestations, Defendants here are presumed to have had knowledge of Mr. Gordon's Washington residency. Unlike the Washington CEMA, however, the Utah statute at issue in *Fenn* contained no such provision.)

Defendant also claims that purposeful availment is lacking because Mr. Gordon fortuitously opened his email from within Washington, and that it lacks the ability to differentiate where an email will be accessed. An identical argument was raised by the defendant in *Verizon v. Ralsky*, and that court utterly rejected the argument. That court cited *Internet Doorway, Inc. v. Parks*, 123 F.Supp.2d 773, 779-80, (S.D. Miss 2001), and held that "[n]otwithstanding that [the defendant] had indiscriminately transmitted her e-mails all over the world,...'by sending an e-mail solicitation to the far reaches of the earth for pecuniary gain, one does so at her own peril, and cannot then claim that it is not reasonably foreseeable that she will be haled into court in a distant jurisdiction to answer for the ramifications of that solicitation." *Verizon*, at 615-616. That court also noted that "one of the key factors courts have focused on in finding purposeful availment of a forum state concerning conduct over the internet is whether the activity was driven by pecuniary gain rather than personal purposes." *Id*, citing *Internet Door* at 779-80. Such commercial email transmissions were held to be "knowing and repeated." *Id*, at 616.

Here, Virtumundo also purposefully and knowingly directed thousands, and likely millions of commercial e-mails to Washington residents. All of them were exclusively for its own pecuniary gain, as it was hired to send the commercial email to market certain products on

PLAINTIFF'S RESPONSE IN
OPPOSITION TO
12 (b)(2) MOTION TO DISMISS -12
GORDON v. VIRTUMUNDO, INC., ET AL

Page 12 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

behalf of its "marketing partners".

Furthermore, it makes no difference whatsoever where Mr. Gordon opens the emails in question. The CEMA makes no reference to where the email is opened in determining whether it violates the statute, but rather only requires that *the email address is held by a resident of Washington State.* RCW 19.190.020(1). Residents of Washington can access their email accounts from anywhere in the world, and if that email violates the statute, they can bring suit. It would be ridiculous to limit their right of action only if they happen to be within the borders of the state when they choose to open their inboxes.

Although the Washington Supreme Court has not directly addressed the jurisdictional question now before this Court, State v. Heckel, 122 Wn. App. 60, 93 P.3d 189 (2004), and State v. Heckel, 143 Wn.2d 824 at 840 (2001), makes it abundantly clear how the Washington courts view personal jurisdiction in the context of unlawful CEMA violations. There, on appeal from the trial court's grant of summary judgment in favor of the State, defendant/appellant Heckel, as Defendants do here, argued that the State had failed to establish that he had "knowledge", or should have known, that any particular email he sent was directed to a Washington resident. The Court of Appeals dispensed with that argument stating:

"Again, if we were to interpret the Act the way Heckel suggests, no spammer sending deceptive e-mail could ever violate the Act as long as he were to use a bulk e-mail program to harvest large numbers of addresses without regard to residence of the owners, because he could always claim that he had no specific knowledge about particular recipients,"

and further,

"The State urges this court to adopt the reasoning of the trial court and at least two federal district courts and hold that a spammer sending millions of e-mails over the Internet has reason to know that he could be "ha[u]led into court in a distant jurisdiction to answer for the ramifications of that solicitation." Internet Doorway, Inc. v. Parks, 138 F.Supp.2d 773, 779-80

PLAINTIFF'S RESPONSE IN OPPOSITION TO
12 (b)(2) MOTION TO DISMISS -13
GORDON v. VIRTUMUNDO, INC., ET AL

Page 13 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

(S.D.Miss.2001); Verizon Online Servs., Inc. v. Ralsky, 203 F.Supp.2d 601, 618 (E.D.Va.2002). Heckel urges a rejection of this "statistical argument," arguing that the Act requires a "particular" or "specific" e-mail address of a Washington resident and that reasonable minds could differ on whether sending any particular number of e-mail messages must statistically impose a conclusive presumption that some of those would be directed to the addresses of Washington residents. But Heckel does not dispute that he sent between 100,000 and 1,000,000 messages per week over a period of at least four months. Based on these numbers, we agree with the State and conclude that Heckel had reason to know that his spam would be directed to Washington residents," Id. at p. 69.

Under the CEMA a person knows that the recipient of an email is a Washington resident "if that information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW § 19.190.020(2), and further, knowledge is imputed if residency information of an email recipient is available from the domain name registrant. However, in Heckel the Washington State Court of Appeals Division I held that this is not the exclusive way of demonstrating knowledge. *State v. Heckel*, 122 Wash.App. 60, 93 P.3d 189 (2004) ("*Heckel II*"), *review denied*, 153 Wash.2d 1021, 108 P.3d 1229 (2005). The Court in *Heckel II* held that there were numerous ways that a spammer knew, or had reason to know, that email addresses to which he sent his spam were held by Washington residents, including: 1) proof that the recipient's email address was included in the Washington Email Registry co-sponsored by the Washington Attorney General and the Washington Association of Internet Service Providers ("the WAISP Registry"); and 2) proof that the spammer sent millions of emails thereby putting him on notice that a substantial volume would be received by Washington residents. *Id.* at 67-70, 93 P.3d 189.

The comments and holdings in both Heckel I and II take the wind out of Defendants' arguments here. Here, as in Heckel, although short on details as to how many emails Defendants send out each day, week, month, they admit that they do in fact regularly send commercial emails out over the internet, and that some portion of their revenue is derived from transactions in the State of Washington. Thus, it is a reasonable assumption to make, taking Plaintiff's allegations as true, that Defendants are engaged in sending at least the number of emails Heckel did, but likely many times more. Moreover, the Heckel decisions poignantly suggest that the analytical factors of the CEMA must be on the spammers who send commercial email to Washington residents, and not on where the spam may be accessed. Accordingly, likewise, it is both reasonable and proper

PLAINTIFF'S RESPONSE IN OPPOSITION TO
12 (b)(2) MOTION TO DISMISS -14
GORDON v. VIRTUMUNDO, INC., ET AL

Page 14 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

to impute to them the knowledge that they would have been sending some of those emails to computers owned by Washington residents, and domiciled in the State of Washington.

Virtumundo disregarded Mr. Gordon's repeated requests to stop sending him email, purposefully choosing to ignore him. They literally inundated him with thousands of emails. This Court should therefore find that Defendant has purposefully availed itself of the privilege of conducting its commercial activities in Washington, and that Plaintiff has established the first element of the test for personal jurisdiction.

### (b) The Second Element - The claim arises out of or results from the defendant's forum-related activities.

The second requirement for specific jurisdiction is that the contacts constituting personal availment must be the ones that give rise to the current suit. The Ninth Circuit measures this requirement in terms of "but for" causation. Zeigler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995). Here, it is clear that but for Defendant's emailing to Plaintiff, there would be no violation of the Washington Commercial Electronic Mail Act and Consumer Protection Act, and thus no suit. Defendant directed its emails to email addresses it knew or should have known belonged to a Washington resident; a Washington resident received its emails; and those emails violated a Washington statute in Washington. Thus, the second element of the test is easily met.

### (c) The Third Element - The exercise of Washington jurisdiction is reasonable.

The final requirement for specific jurisdiction is reasonableness. For jurisdiction to be reasonable, it must comport with fair play and substantial justice. Burger King Corp. v. Rudzeicz, 471 U.S.462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). Burger King explicitly places *upon the defendant* the burden of demonstrating *unreasonableness* and requires the

PLAINTIFF'S RESPONSE IN OPPOSITION TO 12 (b)(2) MOTION TO DISMISS -15
GORDON v. VIRTUMUNDO, INC., ET AL

Page 15 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

1  defendant to put on a "compelling case." Id, at 476-77, emphasis added (See also Core-Vent, at

2  1487, Panavision at 1322.)

3  Defendant has failed to establish any case whatsoever, much less a "compelling case,"

4  that the exercise of Washington jurisdiction is somehow "unreasonable. The Ninth Circuit uses a

5  seven factor test to determine reasonableness:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Panavision, at 1323, citing Burger King, 471 U.S. at 476-77.

No one factor is dispositive; a court must balance all seven. Core-Vent, 11 F.3d at 1488. Defendant has not addressed any of the seven factors.

Plaintiff asserts for the following reasons that jurisdiction is reasonable:

**i: Purposeful interjection.** Here, the degree of interjection is substantial. Defendant has sent over 5,000 emails to Plaintiff alone that specifically violate the CEMA, and likely an untold number of other emails to other Washington residents. In fact, as Mr. Gordon states in his Declaration, even after this action was filed, Defendants continued to send unlawful emails to him.

**ii: Defendants burden in litigating.** While a factor, unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995). Defendant's burden would be relatively light litigating in Washington (see v, below). Virtumundo advertises itself as a leading email marketing company, while Plaintiff is an

PLAINTIFF'S RESPONSE IN OPPOSITION TO 12 (b)(2) MOTION TO DISMISS -16
GORDON v. VIRTUMUNDO, INC., ET AL

Page 16 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

individual, and small sole proprietorship business. Virtumundo has litigated in Washington before, and Washington State courts have asserted jurisdiction over it. Further, as the Washington Supreme Court has held, "the local benefits of [Chapter 19.190 RCW] outweighs any conceivable burdens the Act places on those sending commercial e-mail messages." State v. Heckel, 143 Wn.2d 824 at 840 (2001).

**iii: Sovereignty.** This factor concerns the extent to which this Court's exercise of jurisdiction in Washington would conflict with the sovereignty of Virtumundo's home state of Missouri. This action concerns the violation of a Washington statute in Washington.

**iv: The Forum state's interest.** "[T]he protection of legal rights of Washington residents is a legitimate state interest." Sorb Oil Corp. v. Batalla Corp., 32 Wn.App 296, 301, 647 P.2d 514 (1982). Plaintiff is a Washington state resident. The Washington legislature found that the practices covered by the Washington Commercial Electronic Mailing Act are "matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter19.86 RCW." RCW 19.190.030(3).

**v: Efficient resolution.** This factor focuses on the location of the evidence and witnesses. There is limited evidence in the present case, which primarily consists of e-mails and other electronic media that can easily and economically be reduced to CD-ROMs, and/or transmitted electronically. Few witnesses will need to be called.

**vi: Convenient and effective relief for Plaintiff.** It will be convenient for Plaintiff to litigate this matter in Washington, and would be unduly burdensome for him to litigate elsewhere, including in Defendants' home state.

PLAINTIFF'S RESPONSE IN OPPOSITION TO 12 (b)(2) MOTION TO DISMISS -17
GORDON v. VIRTUMUNDO, INC., ET AL

Page 17 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

**vii: Alternate forum.** The Defendant could assert that it would be preferable to try this matter in Missouri, applying Washington law. But, both public and private interests weigh heavily in Plaintiff's favor here. The evidence, consisting of the actual illegal email transmissions, is in Washington. Public factors compel a Washington forum: it is desirable to have this controversy decided in the locale where people most affected by it, Washington residents reside. Jury duty should not be imposed on Missouri residents, with no relation to the litigation, to decide a violation of Washington law. "There is an appropriateness …in having the trial…in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." J. H. Baxter & Co. v. Central Natl. Ins. Co., 105 Wn. App 657, 20 P.3d 967 (2001).

Accordingly, the exercise of jurisdiction in Washington is overwhelmingly reasonable.

## CONCLUSION

For the reasons stated above, Plaintiff has established clear statutory authority for an exercise of personal jurisdiction over Defendants, and has satisfied all due process requirements: Defendants have purposefully availed themselves of the privilege of conducting activities within the forum state of Washington, thereby invoking the benefits and protections of its laws; the claim arises out of that activity; and the exercise of jurisdiction is reasonable. As such, Plaintiff has established jurisdiction over Defendants in Washington, and Defendants' Motion should be denied.

PLAINTIFF'S RESPONSE IN OPPOSITION TO 12 (b)(2) MOTION TO DISMISS -18
GORDON v. VIRTUMUNDO, INC., ET AL

Page 18 of 19

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101-2509
Phone: 206-624-9392
Fax: 206-624-0717

1

2   RESPECTFULLY SUBMITTED, this 3rd day of April, 2006.

3

4
    <u>MERKLE SIEGEL & FRIEDRICHSEN, P.C.</u>
5
    <u>/S/ Robert J. Siegel</u>
6   Robert J. Siegel, WSBA #17312
    Attorneys for Plaintiffs
7

8

9

10                          **Certificate of Service**

11  I, hereby, certify that on April 3, 2006, we filed this pleading with this Court. The Clerk of the

12  Court will provide electronic notification system using the CM/ECF, which will send an

13
    electronic copy of this Notice to: Derek Newman, Newman & Newman, attorneys for
14
    Defendants.
15

16
    <u>/S/ Robert J. Siegel</u>
17  Robert J. Siegel, WSBA #17312
    Attorneys for Plaintiffs
18

19

20

21

22

23

24

25

26  PLAINTIFF'S RESPONSE IN                    Page 19 of 19            MERKLE SIEGEL & FRIEDRICHSEN, P.C.
    OPPOSITION TO                                                      1325 Fourth Ave., Suite 940
27  12 (b)(2) MOTION TO DISMISS -19                                    Seattle, WA 98101-2509
    GORDON v. VIRTUMUNDO, INC., ET                                     Phone: 206-624-9392
28  AL                                                                 Fax: 206-624-0717