The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JAMES S. GORDON, Jr., a married individual, d/b/a 'GORDONWORKS.COM'; OMNI INNOVATIONS, LLC., a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>VIRTUMUNDO, INC, a Delaware corporation d/b/a ADNOWLEDGEMAIL.COM; ADKNOWLEDGE, INC., a Delaware corporation, d/b/a ADKNOWLEDGEMAIL.COM; SCOTT LYNN, an individual; and JOHN DOES, 1-X,<br><br>Defendants. | No. CV06-0204JCC<br><br>**DEFENDANTS' MOTION FOR AN UNDERTAKING PURSUANT TO 15 U.S.C. § 7706(g)(4)**<br><br>NOTE ON MOTION CALENDAR: November 17, 2006 |

## I. INTRODUCTION

Defendants Virtumundo, Inc., Adknowledge, Inc., and Scott Lynn (collectively "Defendants") respectfully request this Court require plaintiffs James Gordon and Omni Innovations, LLC (together, "Plaintiffs" or "Gordon") to post an undertaking to secure payment of Defendants' reasonable attorneys' fees and costs in Plaintiffs' claims under the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

Dockets.Justia.com

("CAN-SPAM"). Such an undertaking is provided for under CAN-SPAM to secure an award of fees and costs to the prevailing party. 15 U.S.C. § 7706(g)(4)

Plaintiffs claims are unlikely to prevail at trial. Plaintiffs have taken a grossly over-broad position that CAN-SPAM prohibits *any* unsolicited commercial email. CAN-SPAM, however, prohibits unsolicited commercial email only if it fails to comply with the specific requirements of CAN-SPAM. It is clear by a review of the emails produced by Plaintiffs that (i) either they comply with CAN-SPAM, or (ii) were initiated by third parties unrelated to Defendants. Moreover, Plaintiffs are unlikely to prevail because they do not meet the standing requirement under CAN-SPAM as an "Internet access service"; or, in the alternative, they are serving as an Internet access service in violation of their agreement with Verizon Internet.

CAN-SPAM expressly contemplates that the Court may award attorneys' fees and costs to the prevailing party. CAN-SPAM further provides for an undertaking to provide security to defendants against plaintiffs who may not be able to satisfy an award of fees and costs. Plaintiffs are a small entity – providing email access to a handful of individuals for free – and, therefore, are unlikely to be able to pay an award of fees and costs. In order to secure the Court's option to ultimately award fees and costs, Defendants respectfully request that the Court require that Plaintiffs post an undertaking in the amount of $350,000.

## II. FACTS AND ARGUMENT

The CAN-SPAM Act expressly authorizes the Court to "require an undertaking for the payment of costs of such action, and assess reasonable costs, including reasonable attorneys' fees, against any party." 15 U.S.C. § 7706(g)(4). An undertaking is appropriate in this case because (i) there is reasonable possibility that Defendants will prevail on the merits warranting an award of fees and costs; and (ii) Plaintiffs are a small entity providing email service to third parties for no fee and are unlikely to be able to satisfy a judgement of fees and costs.

The purpose of undertaking/bond statutes such as 15 U.S.C. § 7706(g)(4) is to

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

deter frivolous lawsuits and ensure that resources are available to pay the prevailing party's litigation expenses. See, e.g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 186 (1976) ("One of the purposes of...15 USCS 77k(e)), which authorizes a court to require a plaintiff to post a bond for costs, including attorneys' fees, is to deter actions brought solely for their potential settlement value"); Miles v. Okun, 430 F.3d 1083, 1090 (9th Cir. 2005) (citing Congressional emphasis that "[t]he bonding requirement [in 11 U.S.C. § 303(i)] will discourage frivolous petitions as well as spiteful petitions"). The granting of an undertaking does not require the Court to find that Defendants will prevail on the merits or that the Court will ultimately award Defendants fees and costs. *See e.g.*, Cal. Civ. Proc. Code § 1030(b) (In order to trigger the undertaking requirement, a defendant need only show that "there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding.") Rather, it is a means to secure fees so that the Court can meaningfully exercise its right to award Defendants fees and costs as the prevailing party.

### A. The Court should require an Undertaking because Defendants' Emails do not Violate CAN-SPAM.

In the course of discovery in this lawsuit, Plaintiffs have produced a substantial number of emails from Defendants that allegedly violate CAN-SPAM. A review of the emails indicates, however, the emails conform to the statutory requirements of the Act. In order to violate CAN-SPAM, an email must run afoul of one of the following precepts:

1. The email contains false or misleading transmission information. 15 U.S.C. 7704(a)(1);
2. The email contains deceptive subject headings. 15 U.S.C. 7704(a)(2);
3. The email fails to include a return address or comparable mechanism. 15 U.S.C. 7704(a)(3);
4. The email continues after an objection later than ten (10) days after made "in a manner specified in the message" 15 U.S.C. 7704(a)(3)(A) & (4); or
5. The email fails to include an identifier, opt-out, and physical address. 15

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

U.S.C. 7704(a)(5)

A sampling of the email that Plaintiffs have produced in discovery which allegedly violate CAN-SPAM are attached to the Declaration of Roger Townsend and are analyzed below.

**VIRTUMUNDO EMAILS**

1. The Scooters Unlimited Email. (Attached as Exhibit A to Townsend Decl.). The Scooters Unlimited email does not violate CAN-SPAM. The Email clearly indicates that it was sent from the domain name <vmadmin.com>, which is a domain name publicly registered to Virtumundo. (See Exhibit A to Shopmaker Decl.) (WHOIS report for <vmadmin.com>). The email is from "Scooters Unlimited" and the subject heading on the email states "You may be eligible for a power wheelchair at no cost to you." Similarly, the body of the email pertains to the availability of scooters and advises a potential consumer that scooters may be covered by Medicare or insurance. Furthermore the email states that "This is an advertisement" and contains the mailing addresses of both the advertiser, Southeast Mobility Group LLC/Scooters Unlimited, and Virtumundo. The Scooters Unlimited Email was created and transmitted as part of a promotion with one of Virtumundo's customers. (See Shopmaker Decl. at 2-8). Finally, the email includes a functional unsubscribe link that hyperlinks the user to Virtumundo's unsubscribe webpage. (See Exhibit B to Townsend Decl.).

2. The Premier Bank Email. (Attached as Exhibit C to Townsend Decl.). Like the Scooters Unlimited Email, the Premier Bank Email was sent from Virtumundo's registered domain name, <vmadmin.com>. The subject of the Premier Bank Email references "Your First PREMIER Bank Visa/MasterCard Application" and the body of the email provides for a three step process to apply for a First Premier Credit Card. The email states

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

that "This is an advertisement" and includes the mailing addresses of both First Premier Bank and Virtumundo. The Premier Bank Email was created and transmitted as part of a promotion with one of Virtumundo's customers. (See Shopmaker Decl. at 9-13). Finally, the email includes a functional unsubscribe link that hyperlinks the user to Virtumundo's unsubscribe webpage. (See Exhibit D to Townsend Decl.).

3. The University of Phoenix Email. (Attached as Exhibit E to Townsend Decl.). The University of Phoenix Email was also sent from Virtumundo's registered domain name, <vmadmin.com>. The email identifies itself as being from the "University of Phoenix Online" and the subject of the email states that the recipient can "Enroll now and waive the application fee." The body of the email comports to the subject matter and sender as it provides information related to enrolling at the University of Phoenix. The email states that "This is an advertisement" and includes the mailing address for the University of Phoenix (in two places) and for Virtumundo. The University of Phoenix email was created and transmitted as part of a promotion with one of Virtumundo's customers. (See Shopmaker Decl. at 14-18). Finally, the email includes a functional unsubscribe link that hyperlinks the user to Virtumundo's unsubscribe webpage. (See Exhibit F to Townsend Decl.).

**ADKNOWLEDGE EMAILS**

4. The Las Vegas Weddings Email. (Exhibit G to Townsend Decl.). The Las Vegas Weddings email was sent from Adknowledge's publicly registered domain name, <adknowledgemail.com>. (See Exhibit A to Geroe Decl.) (WHOIS report for <adknowledgemail.com>). The email identifies itself as being from "Las Vegas Weddings" and Adknowledge with a subject line stating that "Your Vegas wedding awaits." The body of the email provides information about how to get married in a Las Vegas Wedding Chapel. The

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

email includes the mailing address for Adknowledge (as well as the company's name and logo), a link to find out more about Adknowledge and its privacy policy. The Las Vegas Weddings email was created and transmitted as part of a specific promotion for Las Vegas tourism. (See Geroe Decl. at 2-7). Finally, the email includes a functional unsubscribe link that hyperlinks the user to Adknowledge's unsubscribe webpage. (See Exhibit H to Townsend Decl.).

5. Life Insurance Email. (Exhibit I to Townsend Decl.). Like the Las Vegas Weddings email, the Life Insurance email was sent from Adknowledge's registered domain name <adknowledgemail.com>. The email identifies itself as being from "Life Insurance" and Adknowledge with a subject line "Do you have enough life insurance?" The body of the email indicates that it is a referral source for life insurance and it includes Adknowledge's, company name, logo, and mailing address. The Life Insurance email was created and transmitted as part of a specific promotion for Life Insurance products. (See Geroe Decl. at 8-11). Finally, the email includes a functional unsubscribe link that hyperlinks the user to Adknowledge's unsubscribe webpage. (See Exhibit J to Townsend Decl.).

6. San Diego Tourism Email. (Exhibit K to Townsend Decl.). Like the other Adknowledge emails, the San Diego Tourism email was sent from Adknowledge's registered domain name <adknowledgemail.com>. The email is from "Visit Sunny San Diego" and Adknowledge and has a subject line stating "Set your sights on San Diego." The body of the email advertises sight seeing in San Diego and provides links to hotel and travel listings in San Diego. The email also includes Adknowledge's company name, logo, and mailing address. The San Diego Tourism email was created and transmitted as part of a specific promotion for San Diego tourism. (See Geroe Decl. at 12-16). Finally, the email includes a functional unsubscribe

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

link that hyperlinks the user to Adknowledge's unsubscribe webpage. (See Exhibit L to Townsend Decl.).

Each of the emails above fully comply with the precepts of CAN-SPAM. They are not false and misleading. Each clearly identifies the nature of the solicitation in both the "from" and "subject" line. The body of the emails are consistent with the from and subject lines. Each of the emails originates from domain names which are publicly registered to Adknowledge or Virtumundo. These emails are what they purport to be: advertisements for services over the Internet which comply in full with CAN-SPAM.

Furthermore, Plaintiffs consented to receive emails from Adknowledge and Virtumundo. The account holders of the email addresses at james@gordonworks.com, faye@gordonworks.com, jamila@gordonworks.com, jonathan@gordonworks.com, jay@gordonworks.com, emily@gordonworks.com, msm@gordonworks.com, and jim@gordonworks.com all affirmatively consented to receive emails from Defendants or one of Defendants's co-registration partners. (*See* Shopmaker Decl. at ¶ 21, Exhibit B; Geroe Decl. at ¶ 18, Exhibit D). Plaintiffs' actions amount to regulatory entrapment. Plaintiffs have consented to receive emails from Defendants (and other Defendants in Plaintiffs' many other similar lawsuits in this district and elsewhere) in an effort to troll for statutory damages and nuisance settlements[1]. This is exactly the conduct that an Undertaking is meant to deter.

Gordon acknowledges that he did not unsubscribe "in a manner specified in the

---

[1]It is significant that the Plaintiffs in the matter at bar have at least seven (7) active CAN-SPAM lawsuits in this district alone. *(Omni Innovations LLC v. Inviva Inc. d/b/a American Life Direct and American Life Insurance Co of New York*, C06-1537 C; *Omni Innovations LLC v. BMG Music Publishing NA Inc.*, C06-1350 C; *Omni Innovations LLC v. Publishers Clearing House Inc.* C06-1348 T; *Omni Innovations LLC v. EFinancial LLC et al* C06-01118-MJP; *Omni Innovations LLC v. Insurance Only Inc et al* C06-01210-TSZ; *Omni Innovations LLC v. Ascentive LLC et al* C06-01284-TSZ; *Omni Innovations LLC et al v. Inviva Inc et al.* C06-01537-JCC). Plaintiffs should be required to post an undertaking to deter filing countless frivolous claims in this district and waste scarce judicial resources.

message" as required by CAN-SPAM, 15 U.S.C. 7704(a)(3)(A) & (4), as he declined to click on unsubscribe links or send U.S. mail to the physical addresses provided in the body of the emails about which he complains. In response to Defendants' Interrogatory to "Identify all Your efforts to 'unsubscribe' from the Allegedly Offending e-mails or from Defendants' mailing lists in general", Gordon objected that the request was "irrelevant" because "as a recipient has no affirmative obligation to 'unsubscribe', 'opt-out', or take any other steps to avoid receiving unlawful spam." *See* Gordon Response to Interrogatory No. 15 (Attached as Exhibit S to Townsend Decl.); *see also* See Omni Response to Interrogatory No. 15 (Attached as Exhibit T to Townsend Decl.).

Congress intended for CAN-SPAM to provide clarity to entities advertising goods and services over the Internet. 15 U.S.C. 7704(a)(5)[2]. As a result of CAN-SPAM, an Internet advertiser has notice how to comply with the statute, distribute a lawful email solicitation, and (through the undertaking clause) obtain protection against frivolous

---

[2]Congress found CAN-SPAM was enacted to foster "the development and growth of frictionless commerce", protecting both legitimate business efforts to advertise of the Internet and consumers, both of whom are harmed by unlawful spam. 15 U.S.C. 7701(a)(1) & (2). The legislative history of CAN-SPAM supports the conclusion that email senders and recipients alike may rely on "an Internet-based system for consumers to opt out of receiving further messages from that sender". The Senate Committee report provided that:

> If enacted, S. 877 would require senders of all commercial e-mail to include a valid return e-mail address and other header information with the message that accurately identifies the sender and Internet location from which the message has been sent. Except for transactional or relationship e-mail messages (as defined therein), the legislation would also require senders of commercial e-mail to provide an Internet-based system for consumers to opt out of receiving further messages from that sender. Moreover, a sender of [Unsolicited Commercial Email] UCE would be required additionally to include in the e-mail message itself a valid physical address of the sender as well as clear and conspicuous notice that both the message is an advertisement or solicitation and that the recipient may opt out of further UCE from the sender.

REPORT OF THE COMMITTEE ON COMMERCE, SCIENCE, AND TRANSPORTATION ON S. 877, S. REP. No. 102, 108th Cong., 1st Sess. 2-3 (2003). Attached as Exhibit N to Townsend Decl.

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

lawsuits. Gordon refuses to follow the industry and consumer standard process prescribed by CAN-SPAM and has not put Defendants on notice that he opted-out to receiving emails from Adknowledge or Virtumundo.

Plaintiffs are unlikely to prevail at trial under their CAN-SPAM claims because they are seeking damages for emails which conform to CAN-SPAM. The Court should require Plaintiffs to post an undertaking to reserve the right to meaningfully award costs and fees to the Defendants as the prevailing party.

**B. Plaintiffs Seek Recovery from Emails that are Unrelated to Defendants.**

Plaintiffs have filed numerous emails with the Court which purportedly form the basis of their claims, but were not initiated by Defendants and have no relationship to Defendants. For example,

- Plaintiffs seek damages for an email which was sent from the email address <FreePresent@03.msdsa.com> and allege that the email was received "from or on behalf of Defendants." (Gordon Decl. at ¶ 7 & Exhibit B (Dkt. # 33)). However, this email address is wholly unrelated to Defendants and the domain name is registered to an unrelated third party, "Linkz Internet Services" located in the Cayman Islands, B.W.I. (*See* Shopmaker Decl. at ¶ 21; Geroe Decl. at ¶ 18, Exhibit P to Townsend Decl.).
- Gordon alleges that Defendants sent him an unsolicited commercial email from <shoppersvoice@prefersend.com>. (Gordon Decl. at ¶ 7 & Exhibit E (Dkt. # 12)). However, this email address is also wholly unrelated to Defendants and the domain name is registered to an unrelated third party, "WKI Data" located in New York, New York. (*See* Shopmaker Decl. at ¶ 21; Geroe Decl. at ¶ 18, Exhibit Q to Townsend Decl.).
- Gordon alleges that Defendants sent him an unsolicited commercial email from <LuckyDeals@g.ew01.com>, which is also unrelated to Defendants and registered to a third party (NOLDC, Inc located in New Orleans, LA). (Gordon Decl. at ¶ 5 & Exhibit B (Dkt. # 12), Shopmaker Decl. at ¶ 12; Geroe Decl. at ¶ 18, Exhibit R

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

to Townsend Decl.).

Defendants are not liable for emails initiated by third parties. CAN-SPAM only prohibits the "initiation" of a commercial email message that violates the requirements of the Act. 15 U.S.C. § 7704. Plaintiffs have submitted the foregoing emails from unrelated third parties and alleged, without factual support, that they were initiated from Defendants. This Court has previously warned Plaintiffs that their "tendency to exaggerate claims in its briefing" may give rise to sanctions under Fed. R. Civ. P. 11. (Order, Dkt. No. 24 at p. 3.n5). Reliance on unrelated emails is a prime example of Plaintiffs' tendency to exaggerate and epitomizes the type of lawsuit that Congress intended to deter when it provided for an undertaking in CAN-SPAM lawsuits.

### C. Plaintiffs will not prevail because they are not a provider of an Internet access service.

CAN-SPAM is designed to be enforced by the FTC or state Attorneys General. 15 U.S.C. § 7706(a). Congress allowed for limited standing to private entities that are "a provider of Internet access service" ("IAS") adversely effected by a violation. 15 U.S.C. § 7706(g)(1).[3] The legislative history of CAN-SPAM indicates that Congress was concerned about entities that provide Internet access to users on a broad scale. REPORT OF THE COMMITTEE ON COMMERCE, SCIENCE, AND TRANSPORTATION ON S. 877, S. REP. No. 102, 108th Cong., 1st Sess. 2-3 (2003) (Exhibit N to Townsend Decl.) (referencing Microsoft, Earthlink, AOL, etc.). Congress intended for a limited right of action under CAN-SPAM by a "bona fide Internet service provider" providing

---

[3]The standing provision of CAN-SPAM provides, in pertinent part, as follows:

(1) Action authorized

> A provider of Internet access service adversely affected by a violation of section 7704 (a)(1), (b), or (d) of this title, or a pattern or practice that violates paragraph (2), (3), (4), or (5) of section 7704 (a) of this title, may bring a civil action in any district court of the United States with jurisdiction over the defendant.

15 U.S.C. § 7706(g)(1) (emphasis added).

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

"actual Internet access service to customers." 150 CONG. REC. E72 (Exhibit M to Townsend Decl.). The distinction between a "bona fide" Internet service provider and a non-bona fide Internet service provider is legally significant.

In support of his argument that he is an IAS, Plaintiff asserts that he has provided email accounts to nine people since May 2005. (Omni Response to Interrogatory No. 22, Attached as Exhibit U to Townsend Decl.) These accounts were provided for free, "subject to data collection" by Plaintiff Gordon. Id. Plaintiffs' evidence that they are an IAS is lacking. Merely providing email accounts to a handful of friends and family for no charge does not satisfy the IAS standing requirement under CAN-SPAM. The intent of the IAS standing requirement is to provide a private right of action for major providers of Internet access on a broad scale, who are subject to mammoth volumes of unwanted commercial email. Plaintiffs' transparent efforts to circumvent the regulatory framework by providing email service to a handful of individuals does not comply with the statutory requirement or the intent of Congress.

Furthermore, Plaintiffs are contractually prohibited from being an IAS under the terms of use with their own Internet service provider. Plaintiffs utilize a digital subscriber line ("DSL") through Verizon Internet to provide the purported Internet access service to its customers. (Shopmaker Decl. at ¶ 20; Geroe Decl. at ¶ 17) (providing that the email accounts at <gordonworks.com> utilized the IP address at <4.5.74.214> to view the Adknowledge and Virtumundo emails); (Townsend Decl. at ¶ 18, Exhibit V) (providing that the IP address at <4.5.74.214> was associated with a Verizon DSL line). According to Verizon's terms of use, however, Plaintiffs are prohibited from serving as an IAS. Specifically, as a condition of using Verizon's DSL service (defined as the "Broadband Service" in the agreement), Verizon requires the following terms:

1. "You may not resell the Broadband Service, use it for high volume purposes, or engage in similar activities that constitute resale (commercial or non-commercial), as determined solely by Verizon." Verizon Terms of Service at 3.6.1. (Attached as Exhibit O to Townsend Decl.);

2. "You may not use the Broadband Service to host any type of server personal or commercial in nature." Id. at 3.6.5.

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

These clauses foreclose Plaintiffs from satisfying the standing requirement under CAN-SPAM. In order to qualify as an IAS, Plaintiffs must be engaged in the resale and use of Verizon's service in a manner that violates their agreement with Verizon. Of course, Plaintiffs cannot be compensated for a degradation of service which they have no right to in the first place.

Because Plaintiffs do not qualify as an Internet Access Service and, even if they did, they are contractually prohibited from serving as an Internet Access Service, Defendants are likely to prevail at trial and the Court should require Plaintiffs to post an undertaking to secure an award of costs and fees.

## III. CONCLUSION

Plaintiffs' claims are frivolous and unlikely to prevail at trial. Requiring Plaintiffs to post a bond will ensure payment of Defendants' attorney fees and costs in the event this Court determines that Defendants are the prevailing party. The amount of $350,000.00 would sufficiently allow for the Court to compensate Defendants for their attorney fees and costs, and will not unduly burden Plaintiff's right to seek redress in the courts. Accordingly, Defendants request this Court order Plaintiffs to post a bond for $350,000.00 as security in the event this Court awards Defendants their reasonable attorney fees and costs.

DATED this 2nd day of November, 2006.

Respectfully Submitted,

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

By: ______________________________

Derek A. Newman, WSBA No. 26967
Roger M. Townsend, WSBA No. 25525

Attorneys for Defendants

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800