The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| JAMES S. GORDON, Jr., a married individual, d/b/a 'GORDONWORKS.COM'; OMNI INNOVATIONS, LLC., a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>VIRTUMUNDO, INC, a Delaware corporation d/b/a ADNOWLEDGEMAIL.COM; ADKNOWLEDGE, INC., a Delaware corporation, d/b/a ADKNOWLEDGEMAIL.COM; SCOTT LYNN, an individual; and JOHN DOES, 1-X,<br><br>Defendants. | NO. CV06-0204JCC<br><br>**DEFENDANTS' MOTION TO COMPEL SEGREGATION OF EMAIL PRODUCTIONS**<br><br>**NOTE ON MOTION CALENDAR:**<br>January 5, 2006 |

## I. INTRODUCTION

Plaintiffs brought this lawsuit contending damages from the alleged receipt of unsolicited emails. In February, July and November 2006, Plaintiffs produced thousands of allegedly offending emails. *Each of these productions contained many of the Plaintiffs' earlier productions*, plus additional emails comingled therein. By way of analogy, this is equivalent to a party first producing one hundred (100) bankers boxes of

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 1

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

Dockets.Justia.com

documents; second, supplementing that response with one hundred ten (110) additional bankers boxes (consisting of most of the documents in the first hundred bankers boxes, plus ten additional bankers boxes of documents, *intermingled with the documents in the first hundred boxes*); then third, producing yet another two hundred twenty (220) bankers boxes of documents (consisting of a third copy of most of the documents in the first hundred bankers boxes produced, plus a second copy of the documents in the second production, plus ten additional boxes of documents, *intermingled with the documents in the previous two hundred and ten boxes*). This hypothetical party has thus produced three hundred thirty (330) bankers boxes of documents containing only one hundred twenty (120) boxes of non-identical documents. The remaining two hundred ten (210) bankers boxes are simply chaff.

The hypothetical is precisely the situation here. In connection with the November production in particular, Defendants have repeatedly requested that Plaintiffs provide *only* emails that were not included in previous productions. Plaintiffs have refused, and continue to refuse, to do so. Plaintiffs' repeated production of the same emails (contained in files intermingled with emails that had not previously been provided) is an egregious abuse of the discovery process and is plainly improper.

Defendants respectfully request that this Court order Plaintiffs to provide electronic files consisting of *only* emails that have not already been produced. If Defendants' motion is denied, Defendants will be forced to do a manual comparison of the files produced on three different dates (and including tens of thousands of emails) at great expense and effort. Plaintiff's conduct is particularly egregious in that Plaintiff is in a position to produce the information requested by Defendants with almost no effort whatsoever.

## II. FACTS

**A.      Plaintiffs' Production of Emails**

On or about February 24, 2006, Defendants received Plaintiffs' First Production ("First Production") with a cover letter dated February 16th, 2006. Linke Decl. at ¶ 2.

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 2

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  Plaintiffs' First Production consists of a CD-ROM disc containing two (2) mailbox
2  archives in the Eudora electronic data format containing email messages allegedly giving
3  rise to Plaintiffs' causes of action. Id. ¶ 4. On or about July 25, 2006, Defendants
4  received Plaintiffs' Second Production ("Second Production") with no accompanying
5  cover letter. Id. ¶ 5. Plaintiffs' Second Production consisted of a CD-ROM disc
6  containing an additional two (2) Eudora mailbox archives containing email allegedly
7  giving rise to Plaintiffs' causes of action. Id. ¶ 6. The mailbox archives contained in the
8  Second Production were "Virtumundo.mbx," containing 5,047 emails, and "Virtumundo -
9  Omni.mbx," containing 7,016 emails. Linke Decl. at ¶ 7.

10  Beginning on or about November 16, 2006, Defendants' counsel engaged a team of
11  seven contract attorneys to create a comprehensive log of all of the emails contained in
12  the First Production and the Second Production and their compliance with 15 U.S.C.
13  7701 ("CAN-SPAM") and the Washington Commercial Email Act, RCW 19.190. Id. ¶ 8.
14  Defendants' counsel trained the contract attorneys about the review process and the
15  relevant law. The lawyers then spent weeks reviewing all of the emails in the First
16  Production and the Second Production for a total of about 500 hours, at a cost of tens of
17  thousands of dollars to Defendants. Id. ¶ 9-10. Upon completion of the project on or
18  about December 3, 2006, the contract attorneys terminated their involvement with
19  Defendant's counsel. Id. ¶ 11.

20  On or about November 29, 2006, Defendants received Plaintiffs' Third Production
21  ("Third Production"). Although the Third Production was accompanied by a cover letter
22  dated November 14, 2006, Plaintiffs included an additional note about the production
23  dated September 27, 2006, and digital files with modification dates of September 9, 2006
24  and September 13, 2006. Id. ¶ 12. The dates on the additional note included in the Third
25  Production and on the produced archives indicate that Plaintiffs could have produced the
26  evidence contained in the Third Production months earlier than they actually did. Id. ¶ 13.
27  Plaintiffs' Third Production consisted of a CD-ROM disc containing an additional
28  two (2) Eudora mailbox archives containing email allegedly giving rise to Plaintiffs'

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 3

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1 causes of action. Id. ¶ 16. The archives produced in Plaintiffs' Third Production had the
2 same file names as archives produced in the First Production and the Second Production
3 but contained many additional emails. The archives were "Virtumundo.mbx," containing
4 8,124 emails, and "Virtumundo - Omni.mbx," containing 11,201 emails. Id. ¶ 17.

5 Defendants estimate that around 9,000 messages in the Third Production were
6 previously produced in the First Production and the Second Production. Now, these
7 emails must also be individually analyzed to establish the defense in this case. Id. ¶ 18.
8 As of this date, Defendants have been unable to segregate any new emails contained in
9 the Third Production from emails previously provided. Linke Decl. at ¶ 20. The emails
10 in Plaintiffs' Third Production are hopelessly disorganized and unduly burdensome for
11 Defendants to parse and understand. Linke Decl. at ¶ 22.

12 If Defendants' counsel had received Plaintiffs' Third Production prior to November
13 16, by the beginning of their comprehensive review, the new messages could have been
14 included the review process. Id. ¶ 23. Plaintiffs' counsel claimed that Eudora provided a
15 software utility relating to sorting mail by date that would automatically segregate the
16 emails which had been previously produced. Id. ¶ 24. However, Defendants performed a
17 diligent inquiry and concluded that Eudora does not contain any utility to compare
18 mailboxes, nor any utility to remove duplicate emails or otherwise segregate the
19 previously produced emails. Id. ¶ 25.

20 Additionally, the process of sorting by date would not permit Defendants to
21 identify all additional emails. While a date sort might identify any new emails, which
22 would appear at the end of the date range, it would not identify any new emails within the
23 date range of the emails from the First Production or the Second Production. Id. ¶ 26.
24 Plaintiffs' counsel on December 20, 2006 refused to commit to producing only the new
25 emails. Id. As of this date, Plaintiffs have not produced the new emails segregated from
26 the first two productions. Id. ¶ 27.

27 There remains no obvious means of segregating any new emails that may be
28 contained in the Third Production from the thousands of duplicative messages that had

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 4

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

previously been produced in the First Production and the Second Production. The only means of comparing messages appears to be by undertaking a manual, one-by-one review of all of the thousands of emails included in the Third Production. Id. ¶ 30. Furthermore, Plaintiffs' inexplicable delay in producing the emails contained in the Third Production until the end of Defendants' comprehensive review means Defendants were unable to have the contract team review them prior to ending disbanding the team. Id. ¶ 31. In order to review those additional messages now, Defendants would have to compare all of the new messages contained in Plaintiffs' Third Production with the completed log, or begin a new extensive document review. Either option would cost Defendants tens of thousands of dollars in additional fees. Id. ¶ 32.

Also, it is unknown whether the contract attorneys that have already been trained to review the emails in this case would be available again. More likely, Defendants would have to locate and train a new group of attorneys, at considerable expense. Id. ¶ 33.

**B.      The Parties Fed. R. Civ. P. 37 Efforts to Meet and Confer**

On the same date that Defendants received the belatedly produced emails, November 29, 2006, Defendants sent a letter to Plaintiffs' counsel outlining their objections to the belatedly produced emails. *See* Exhibit E to Linke Decl. Plaintiffs' counsel refused to segregate the emails. Linke Decl. at ¶ 21.

On or about December 4, 2006, counsel again met and conferred regarding the belatedly produced emails. Newman Decl. at ¶ 2. Again on December 14, 2006, during Defendants' deposition, the parties met and conferred regarding the subject. See Newman Decl. at ¶ 5; see also Exhibit E to Linke Decl. In that meeting, Plaintiffs' counsel advised that he would consult with his client and would use good faith efforts to produce the information as requested. Id. ¶ 6. However, Plaintiffs' counsel refused to commit to producing only the new emails, however, and has not in fact produced them. Newman Decl. at ¶ 6; Linke Decl. at ¶ 27, Ex. F. In a final attempt to eliminate the Court's involvement in this dispute, Defendants' counsel sent a letter to Plaintiffs'

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 5

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  counsel on December 21, 2006 again requesting segregated production of emails.  Once
2  again, Plaintiff's counsel stated that he would consult with his client, but refused to
3  commit to producing only the new emails.  Linke Decl., Ex. H.

### III.  ARGUMENT & AUTHORITY

This discovery dispute is unusual in that it concerns only the manner of production, not the substance.  At issue is whether Plaintiffs' two supplemental productions, each of which contained the entirety of the previous productions, is proper.  It plainly is not.  Identifying which emails among the thousands produced are unique, non-identical communications would require a manual, email-by-email comparison between the Third Production and the First Production and Second Production.  This would be a massive undertaking for Defendants, who do not know the sort criteria that would result in the set of emails required, but a trivial one for Plaintiffs, who do.

Federal Rules of Civil Procedure Rule 34(b) places the obligation on the responding party to "organize and label" the documents which are produced for inspection.  The reason it does so is that "[m]any discovery requests, *and responses thereto*, can be used to harass opposing parties or to increase the cost of litigation." Stiller v. Arnold, 167 F.R.D. 68, 71 (D. Ind. 1996) (emphasis added).  By way of example, in Stiller the court found that "producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b)."

Although there is little authority directly on point, it seems clear that production consisting of successive sets of files commingling documents already produced and new documents does not comply with the obligation to "organize and label" documents under Rule 34(b). Indeed, courts that have considered electronic discovery issues tend to simply assume without discussion that removal of duplicates is a required part of production, to be completed by the responding party.  Thus, in Medtronic Sofamor Danek, Inc. v. Sofamor Danek Holding, Inc., 2003 U.S. Dist. LEXIS 8587 (D. Tenn. 2003), the court reasoned:

> Producing electronic data requires, at minimum, several steps: (1) designing and applying a search program to identify potentially relevant electronic files,

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 6

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

> (2) reviewing the resulting documents for relevance, (3) reviewing the resulting documents for privilege; (4) deciding whether the documents should be produced in electronic or printed form, and (5) actual production. If, however, the allegedly discoverable information is contained on backup tapes, a preliminary step must be performed. All data on each backup tape must be restored from the backup tape format to a format that the standard computer can read. In the case of a large data volume on multiple tapes like this case presents, the restored files from each tape must be compared to the restored files from every other tape and duplicate files eliminated. The restored data files that are not duplicates must be converted to a common format so that a search program may seek information within them.

Medtronic Sofamor Danek, Inc. v. Sofamor Danek Holding, Inc., 2003 U.S. Dist. LEXIS 8587 (D. Tenn. 2003). Similarly, in Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, the court discussion of electronic discovery assumed without analysis that duplicate removal must is a necessary part of production.

Certainly, if Plaintiffs conduct involved paper rather than electronic documents, it would be obvious that it was unreasonable, dilatory, and imposed an undue burden on Defendants. The analysis is not altered because emails are involved. The data, as provided by Plaintiffs, is functionally unavailable to Defendants. "[W]hether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format." Data is "accessible" if it is stored in a "readily usable format" that "does need to be restored or otherwise manipulated to be usable." Conversely, data is "inaccessible" if it is not readily useable. Quinby v. WestLB AG, 2006 U.S. Dist. LEXIS 64531, 20-21 (D.N.Y. 2006), citing Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (internal citations omitted).

The rules provide that the court may make any order which justice requires to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c) (emphasis added). There is no dispute that the emails are relevant and discoverable. Indeed, they have already been produced. At issue in the instant motion is the form of the production and whether the Court should require that Plaintiffs be required to make available the belatedly produced emails in a form that is not commingled with thousands of previously produced emails and cannot be segregated without substantial expense. The form of the production by Plaintiffs subjects to

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 7

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

defendants to undue burden and expense. Moreover, the timing of the production reflects litigation gamesmanship and has caused Defendants substantial prejudice. Had Plaintiffs merely produced the emails when the files were created or even when the cover letter was drafted, then the prejudice to Defendants could have been avoided.

## IV. CONCLUSION

Defendants respectfully request that the Court order Plaintiffs to produce electronic files containing only unique, non-identical emails that were included in the November 29 production, and excluding any emails that were produced in any previous production.

DATED this 21st day of December, 2006.

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

By: _____
Derek A. Newman, WSBA No. 26967
Roger M. Townsend, WSBA No. 25525

Attorneys for Defendants

DEFS.' MOT. TO COMPEL
SEGREGATION OF EMAILS
CASE NO. CV06-0204C - Page 8

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800