1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JAMES S. GORDON, Jr., a married
individual, d/b/a 'GORDONWORKS.COM';
OMNI INNOVATIONS, LLC., a
Washington limited liability company,

        Plaintiffs,

        v.

VIRTUMUNDO, INC, a Delaware
corporation d/b/a
ADNOWLEDGEMAIL.COM;
ADKNOWLEDGE, INC., a Delaware
corporation, d/b/a
ADKNOWLEDGEMAIL.COM; SCOTT
LYNN, an individual; and JOHN DOES,
1-X,

        Defendants.

NO.  CV06-0204JCC

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY**
**JUDGMENT**

**NOTE ON MOTION CALENDAR:**
January 12, 2007

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................. 1

II.   FACTS ........................................................ 2

      A.    Virtumundo Emails ..................................... 2

      B.    Relevant Procedural and Discovery History ............. 4

III.  ARGUMENT .................................................... 5

      A.    Summary judgment should be denied because there are disputed
            issues of material fact. .............................. 5

      B.    Plaintiffs lack standing to assert claims under CAN-SPAM because
            they are not a *bona fide* Internet access service provider adversely
            affected. ............................................. 7
            1.    Plaintiffs are not a bona fide Internet access service provider .... 7
            2.    Plaintiffs were not adversely affected by a violation of the
                  statute ......................................... 9

      C.    Defendants qualify for the safe harbor because the alleged "from"
            lines identify the sender of the message. ............. 11

      D.    CAN-SPAM does not require the "from name" to consist of a
            sender's "actual" name. .............................. 14
            1.    Congress clearly did not intend to require a "from name" ...... 14
            2.    Plaintiffs' position is not based on a permissible construction
                  of the statute .................................. 15

      E.    Plaintiffs' state law claims do not establish any violation of CEMA,
            and CAN-SPAM preempts Plaintiffs' CEMA argument. ....... 17

      F.    Plaintiffs fail to establish that Defendants are the initiators of the
            emails ............................................... 19

      G.    Plaintiffs' purported evidence is inadmissible and should be stricken .. 20

IV.   CONCLUSION .................................................. 21

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - i

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

# I.  INTRODUCTION

This motion arises out of Plaintiffs' Motion for Relief from Deadline (Docket. No. 42, the "Relief Motion") filed in response to Defendants' (still-pending) Motion for an Undertaking Pursuant to 15 U.S.C. § 7706(g)(4) (Dkt. No. 38, the "Motion for an Undertaking").  In the Relief Motion, Plaintiffs asserted that if excused from responding to the Motion for an Undertaking they planned to file a motion that would "result in the resolution of the ultimate issues in this case" (Relief Motion 2:11-12). Plaintiffs therefore requested "the opportunity to establish that as a matter of law . . . emails sent by, or on behalf of Defendants, do in fact violate the [CAN-SPAM] Act." (Relief Motion 3:11-12).

This Court gave Plaintiffs the opportunity they requested (Dkt. No. 46). Far from filing a motion that would result in the resolution of this case, however, Plaintiffs filed the instant motion against Virtumundo only[1] which they characterize as a "Motion for Partial Summary Judgment" (Dkt. No. 53, the "Motion").  The Motion addresses only a single non-dispositive issue, namely "[d]oes a commercial electronic mail message that does not accurately identify the sender of the email in the 'From' field of the header comply with the CAN-SPAM ACT and/or CEMA" (Motion 3:19).  Plaintiffs' novel theory that CAN-SPAM requires the "from name" field (in the "from" line) to contain the "actual name" of the sender is contrary to the plain language of CAN-SPAM, unworkable in practice, and without legal precedent.  In fact, Plaintiff concedes uncertainty whether this sender would be the person who sent the email or the person who hired the Defendant to send it (Motion 3:15).

Moreover, even if Plaintiffs were correct that CAN-SPAM contained such a requirement, Defendants' emails would not violate it.  Every email Defendants send contains their domain name and a working email address in the "from line".  The domain names Defendants use identify Defendants as the source of the message.  In addition,

---

[1] Plaintiffs do not specify against which defendant(s) they move.  However, the so-called "Relevant Facts" section addresses only defendant Virtumundo's alleged emails, and does not mention defendant Adknowledge or Mr. Lynn.  *See* Motion 2:2 - 3:9.

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 1

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   Defendants use the "from name" field to identify either (1) the line of business to which

2   the email pertains, or (2) the actual name of the entity on whose behalf the email is

3   initiated.  Defendants' "from" line usages are expressly contemplated by CAN-SPAM

4   and provide more (and more useful) information to recipients than does the interpretation

5   Plaintiffs urge.

6       Plaintiffs' position, if adopted, would result in *more* consumer confusion, not less,

7   and would run contrary to the policies underlying CAN-SPAM.  It would also create

8   regulatory confusion in situations where a single email message contained promotions or

9   solicitations from multiple and independent advertisers (which is the case with Defendant

10  Adknowledge).  Plaintiffs' argument that Defendants' "from name" usage is materially

11  false or misleading is not only factually incorrect but legally frivolous.  Plaintiffs'

12  repeated rhetorical exhortations that various matters are "indisputable" notwithstanding,

13  Plaintiffs cannot establish they are entitled to summary judgment on any of their claims[2]

14  and their Motion should be denied.

15                          **II.  FACTS**

16  **A.    Virtumundo Emails**

17      Exhibit "A" to the Declaration of James Gordon in Support of Plaintiffs' Motion

18  (Dkt. No. 64) consists of printouts of the emails upon which Plaintiffs' claims against

19  defendant Virtumundo are based.  (Motion 2:19-3:2).  Although Virtumundo has not

20  performed an exhaustive analysis of these emails, the vast majority of them include a

21  return email address at one of the following domain names: <vm-mail.com>,

22  <vmadmin.com>, and <virtumundo.com>.  Declaration of Michael Shopmaker in Support

23  of Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Shopmaker Decl.")

24

25  ─────────────────

26      [2] Plaintiffs fail even to identify the elements of their claim, much less point to
    specific undisputed evidence in support of those elements. Plaintiffs' focus is entirely on

27  the supposed "actual name of the sender" issue, and their motion is more accurately
    characterized as a motion for summary adjudication of that issue than as one for partial

28  summary judgment.

─────────────────

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

¶ 2.

Virtumundo is the registrant (*i.e.*, owner) of each of these domain names, and Virtumundo is identified in the WHOIS database as such.  Shopmaker Decl. ¶ 3.  The WHOIS database is a publically available source to identify the registrant of, and the registrant's contact information for, any .com domain name.  Id. ¶ 4. The registrant provides its own contact information for the WHOIS database.  Id.  A WHOIS query on any of the domain names at issue in this case will return information including Virtumundo's name, correct physical address, and telephone number.  Id. ¶ 5.

Email senders who wish to obscure their identity may provide inaccurate contact information when registering domain names, or use "domain proxy" services to prevent their contact information from appearing in the WHOIS database.  Shopmaker Decl. ¶ 6. Virtumundo does not engage in such practices, and indeed endeavors to make itself easy to identify and locate from the information in the "from" lines of the emails it sends.  Id. ¶ 7.  Every "from" line from Virtumundo contains (i) a working "from" email address that is attached to (ii) an accurate and truthful domain name that is registered to Virtumundo listed in WHOIS. Id. ¶ 8.  In addition, the body of each email Virtumundo sends always includes accurate contact information for Virtumundo and working "unsubscribe" links. Id.

In the course of its business, Virtumundo creates and transmits emails as part of promotional campaigns for its customers.  Shopmaker Decl. ¶ 9. All of Virtumundo's email solicitations contain a working "from" email address that routes to Virtumundo. Virtumundo typically also uses the "from name" field to identify the customer.  Id.  In other circumstances, Virtumundo uses the "from name" field to identify the line of business to which the email pertains.  Id. ¶ 10.  Thus, an email advertising police training might have the "from name" of "Criminal Justice" followed by the email address at Virtumundo's domain, "CriminalJustice@vm-mail.com".  Id.  This performs three functions.  Id. ¶ 11.  First, it informs the recipient that the message is a commercial email, rather than an email from a particular individual.  Id.  Second, it informs the recipient of

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 3

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    the general subject of the message. Id. Third, it accurately identifies Virtumundo's

2    business line that initiated the message. Id. It is not "advertising copy" as Plaintiffs

3    contend. Id. .

4        Virtumundo identifies itself in the "from" line by using its domain name, and

5    expressly in the content of the emails it sends, for informational rather than "branding"

6    purposes. Shopmaker Decl. ¶ 12.   Virtumundo does not advertise its own services to

7    consumers, and most consumers would not recognize the Virtumundo name. Id. ¶ 13

8    Similarly, Virtumundo transmits email to persons who generally do not have any personal

9    relationship with any Virtumundo employee.  As such, including in the "from name" field

10   the name of Virtumundo or its employee who initiates the transmission would not provide

11   meaningful information. Id. ¶ 14.  To the contrary, to do so would obscure the fact that

12   the email contains a commercial solicitation.  A "from name" of "William A. Worker" (a

13   hypothetical Virtumundo employee, for example) may lead a consumer to believe the

14   message is from an individual and is personal in nature, rather than from a company.  Id.

15   The "from name" of *CriminalJustice*, on the other hand, clearly implies a commercial

16   solicitation.  "Virtumundo" or "William A. Worker" would be ambiguous. Id.

17       Plaintiffs admitted that they "were not 'adversely affected' (as that term is used in

18   15 USC 7706(g)(1)) by the [emails they allege Defendants sent]."[3]  See Declaration of

19   Derek A. Newman in Support of Opposition to Plaintiffs' Motion for Partial Summary

20   Judgment ("Newman Decl.") ¶ 6, Ex. C at 2:3 (No. 7).  Rather, "Omni is only seeking

21   statutory damages in this action."  Id.

22   **B.    Relevant Procedural and Discovery History**

23       Plaintiffs are in the business of filing lawsuits under CAN-SPAM and CEMA.

24   (Newman Decl. ¶ 2).  Plaintiffs commenced this action on February 9, 2006, alleging,

25   *inter alia*, receipt of 6000 unsolicited emails. (Dkt. No. 1).  Plaintiff filed a first amended

26

27       [3] Plaintiffs made this surprising admission in "Plaintiff Omni's Answers and
     Responses to Defendant Virtumundo's First Requests for Admission to Omni" in
28   response to Request for Admission No. 7.

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 4

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  complaint on April 4, 2006 (Dkt. No. 15).

2       On November 2, 2006, Defendants filed a Motion for an Undertaking Pursuant to

3  15 U.S.C. § 7706(g)(4), with a noting date of November 17, 2006 (Dkt. No. 38).  On

4  November 3, 2006, Plaintiffs filed a Motion for Relief, seeking to be excused from

5  responding to the Motion for an Undertaking on the ground that they planned to file a

6  summary judgment motion that would "result in the resolution of the ultimate issues in

7  this case" (Relief Motion 2:11-12)) (Dkt. No. 42). The Court granted Plaintiffs' Motion

8  for Relief.  (Dkt. No. 46). On December 18, 2006, Plaintiffs filed the Motion now before

9  the Court. (Dkt. No. 53).

10      Pursuant to FED. R. CIV. P. 16(f), the last court day to complete discovery

11  and file and serve motions to compel discovery was December 15, 2006.

12  By stipulation of the parties, the Court extended the deadline for the parties to depose fact

13  witnesses to January 15, 2007, and extended the deadline for filing general dispositive

14  motions to January 22, 2007 (Dkt. No. 50).

15      The depositions of plaintiffs James S. Gordon and Omni Innovations, LLC are

16  scheduled for January 10 and 11, 2006.  (Newman Decl., ¶ 3).  Counsel for Defendants

17  asked Plaintiffs' counsel to stipulate to move the Motion back a week, to permit

18  Plaintiffs' depositions to be taken before Defendants' Opposition to the Motion was due.

19  Plaintiffs refused.  (Newman Decl., ¶ 4).   Accordingly, Defendants' Opposition is being

20  filed before Plaintiffs' depositions have been taken.  Id.

21

22                          **III.  ARGUMENT**

23  **A.    Summary judgment should be denied because there are disputed issues of
        material fact.**

24      Summary judgment is appropriate only upon a showing that there is "no genuine

25  issue as to any material fact and the moving party is entitled to judgment as a matter of

26  law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 91 L. Ed. 2d

27  265, 106 S. Ct. 2548  (1986) ("One of the principal purposes of the summary judgment

28  rule is to isolate and dispose of factually unsupported claims or defenses . . . .").  A fact is

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C -  5                    **NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**                505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   "material" if its resolution will affect the outcome of the lawsuit. <u>Anderson v. Liberty</u>

2   <u>Lobby, Inc.</u>, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A dispute

3   about a material fact is "genuine" if "the evidence is such that a reasonable jury could

4   return a verdict for the nonmoving party." <u>Id</u>.

5       The moving party bears the burden of informing the court of the basis for its

6   motion, together with evidence demonstrating the absence of any genuine issue of

7   material fact. <u>Celotex Corp. v. Catrett</u>, *supra*, 477 U.S. at 323.  Once the moving party

8   has met its burden, the party opposing the motion may not rest upon the mere allegations

9   or denials of his pleadings but must set forth specific facts showing that there is a genuine

10  issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, *supra*, 477 U.S. at 248.  Although the

11  parties may submit evidence in an inadmissible form--namely, depositions, admissions,

12  interrogatory answers, and affidavits--only evidence which might be admissible at trial

13  may be considered by a trial court in ruling on a motion for summary judgment. FED. R.

14  CIV. P. 56(c) ; <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542,

15  1550-51 (9th Cir. 1990); <u>Beyene v. Coleman Security Services, Inc.</u>, 854 F.2d 1179, 1181

16  (9th Cir. 1988); *see* <u>United States v. Dibble</u>, 429 F.2d 598, 603 (9th Cir.1970) (court may

17  disregard inadmissible evidence *sua sponte*).

18      Plaintiffs Motion falls far short of meeting the initial burden of demonstrating the

19  absence of any genuine issue of material fact. Instead, Plaintiffs repeatedly

20  mischaracterize Defendants' position as consistent with their own (*see*, *e.g.*, Motion 2:2

21  ("[t]he Material facts of this matter are uncontested"); <u>id</u>. at 5:8 ("there are no material

22  facts in dispute"); <u>id</u> at 6:15-16 ("the fact that the Defendant Virtumundo here failed to

23  identify itself on the 'From' line, but instead falsely displayed its advertising copy, is

24  indisputable"). In truth, Defendants dispute most of Plaintiffs' factual contentions.

25  Plaintiffs' rhetoric cannot remedy the paucity of their evidence, the vast majority of

26  which is inadmissible (and to which Defendants object and move to strike, as described

27  below).  Finally, Plaintiffs and Defendants have radically different views regarding the

28  inferences that can properly be drawn from those facts that are uncontested, again

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 6

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  suggesting that summary judgment is inappropriate in the instant action.

2  **B.    Plaintiffs lack standing to assert claims under CAN-SPAM because they are**
3  **not a *bona fide* Internet access service provider adversely affected.**

4  CAN-SPAM (15 U.S.C. §§ 7701, *et seq.*, the "<u>Act</u>") provides that *only* certain

5  federal agencies, state attorneys general, and "a provider of Internet access service

6  adversely affected by a violation" have standing to bring a claim under the statute. 15

7  U.S.C. § 7706(g)(1).  CAN-SPAM does not provide a private right of action to

8  consumers.  15 U.S.C. § 7706(a).  Consequently, the first material issue in dispute is

9  whether Plaintiffs (i) are an Internet access service provider and (ii) have been adversely

10  affected by a violation of the statute.

11  **1.    Plaintiffs are not a bona fide Internet access service provider.**

12  As described in Defendants' pending Motion for an Undertaking, Plaintiffs have

13  no standing unless they prove they are "bona fide Internet service provider(s)" providing

14  "actual Internet access service to customers." 150 CONG. REC. E72 (attached as Exhibit

15  M to Townsend Decl. in support of Motion for an Undertaking (Dkt. No. 41)).  "The term

16  'Internet access service' has the meaning given that term in section 231(e)(4) of the

17  Communications Act of 1934 (47 U.S.C. 231(e)(4))".  15 U.S.C. § 7702 (11).

18   The term "Internet access service" means a service that enables users to access
19   content, information, electronic mail, or other services offered over the
     Internet, and may also include access to proprietary content, information, and
     other services as part of a package of services offered to consumers. Such term
20   does not include telecommunications services.

21  47 U.S.C. § 231(e)(4).

22  Plaintiffs contend they are an Internet access service provider because they operate

23  a web site and have provided email accounts to nine people since May 2005. (Omni

24  Response to Interrogatory No. 22, Attached as Exhibit U to Townsend Decl.) These

25  accounts were provided for free "subject to data collection" by Plaintiff Gordon. <u>Id</u>.

26  Merely providing email accounts to a handful of friends and family at no charge does not

27  render Plaintiffs a bona fide Internet access service provider.  If it did, every one of

28  AOL's more than 20 million subscribers (who can assign screen names and associated

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C -  7

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    email accounts to household members) would qualify. Such a construction is plainly

2    absurd.

3        Plaintiffs do not provide "Internet access service" for the purposes of the Act

4    because "consumers" in the context of the Act implies a commercial relationship.[4] CAN-

5    SPAM's standing requirement is intended to provide a private right of action for

6    legitimate Internet access service businesses, such as AOL itself.  The statute does not

7    confer that right on an Internet access service customer, notwithstanding that such

8    customer may in turn provide free email accounts to its friends or family.  *See* REPORT

9    OF THE COMMITTEE ON COMMERCE, SCIENCE, AND TRANSPORTATION ON

10   S. 877, S. REP. No. 102, 108th Cong., 1st Sess. 2-3 (2003) (the "Committee Report")

11   (Exhibit N to Townsend Decl. in Support of Defendants' Motion for an Undertaking)

12   (Dkt. No. 41-14) (referencing global Internet access providers such as Microsoft,

13   Earthlink, AOL, etc.). Since Plaintiffs do not have customers, they are not a "bona fide

14   Internet service provider" as contemplated by the Act, and do not satisfy CAN -SPAM's

15   standing requirement.

16       Further support for Defendants' contention that Plaintiffs are not a "bona fide

17   Internet service provider" comes in the Gordon Declaration.  There, the plaintiff

18   acknowledges at some unspecified time since 2005 he "took over the administration of

19   those email accounts and began directly receiving the email sent thereto." (Gordon Decl.

20   ¶ 9). Gordon thus admits that even the non-paying "customers" upon whom he founded

21   his claim to be a provider of Internet access service no longer receive email sent to their

22

23

24       [4] This implication is supported by the fact that in presenting the bill eventually
     codified as CAN-SPAM to the House of Representatives, Hon. John D. Dingell stressed
25   that "we intend that Internet access service providers provide *actual Internet access
     service to customers*. 150 CONG. REC. E72, *supra* (Exhibit "M" to Townsend Decl.)
26   (emphasis added). "Customers" clearly suggests a commercial transaction. *See, e.g.,*
     Dictionary.com Unabridged (v 1.1). Random House, Inc.
27   http://dictionary.reference.com/browse/customer (accessed: January 03, 2007)
28   ("Customer: 1. a person who purchases goods or services from another; buyer; patron.")

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C -  8

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   (former) accounts. Plaintiffs have not met their burden of establishing that they are

2   providers of Internet access service, and the Motion on the CAN-SPAM claims should be

3   denied without further consideration.

4           **2.      Plaintiffs were not adversely affected by a violation of the statute.**

5           The Committee Report submitted in connection with S. 877 (the bill ultimately

6   codified as CAN-SPAM) described in some detail the adverse economic impact of

7   unsolicited commercial email on Internet service providers:

8           Massive volumes of spam can clog a computer network, slowing Internet
            service for those who share that network. ISPs must respond to rising volumes
9           of spam by investing in new equipment to increase capacity and customer
            service personnel to deal with increased subscriber complaints. ISPs also face
10          high costs maintaining e-mail filtering systems and other anti-spam technology
            on their networks to reduce the deluge of spam. Increasingly, ISPs are also
11          undertaking extensive investigative and legal efforts to track down and
            prosecute those who send the most spam, in some cases spending over a
12          million dollars to find and sue a single, heavy-volume spammer.

13          S. Rep 108-102, at 6.  The experience of Earthlink, as described in Earthlink, Inc.

14  v. Carmack, 2003 U.S. Dist. LEXIS 9963, 12-13 (D. Ga. 2003), is illustrative:

15          In addition to the administrative and out-of-pocket expenses described above,
            EarthLink suffers other types of more serious and substantial economic loss
16          as the result of spam sent into or out of EarthLink's network. These include
            the loss of business reputation and the loss of existing and prospective
17          customers that necessarily occurs when an ISP's users are repeatedly spammed
            and/or when its resources are used to send spam to other users.
18

19  Earthlink, Inc. v. Carmack, 2003 U.S. Dist. LEXIS 9963, 12-13 (D. Ga. 2003) (Internal

20  quotations and citations omitted).

21          Unlike Earthlink, Plaintiffs did not suffer serious and substantial economic loss,

22  and indeed suffered no economic loss whatsoever.  Since Plaintiffs do not operate a

23  business, they could not have suffered loss of business reputation, nor the loss of

24  prospective customers.  Likewise, since there were only nine users of Plaintiffs' email

25  server at most, Plaintiffs' resources could not have been used to send spam to other users.

26          The only evidence offered by Plaintiffs that they experienced any adverse impact

27  as a result of Defendants' conduct is a vague, unsupported allegation in the Gordon

28  Declaration that "the volume of spam sent by Defendants . . . has cost me untold hours of

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C -  9

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   manpower, and substantial resources." Gordon Decl. ¶ 26.  First, this does not suffice to

2   establish that there is no genuine issue as to any material fact.  Second, the time and

3   resources expended by Gordon appear to be exclusively directed toward litigation

4   preparation (such as sorting emails by sender and deleting duplicates), and not related to

5   combating or managing spam *per se*.  *See, e.g.,* Gordon Declaration in Reponse and

6   Opposition to Defendants' Motion to Compel Segregation of Emails, ¶ 3 ("The job of

7   collecting, sorting, and compiling records on this and other defendants is a very time-

8   consuming process").  Mr. Gordon's time, it should be stressed, is invested in collecting,

9   reviewing, sorting, and compiling records on emails that have *already been identified as*

10  *spam.  See* id.  ("my clients send me emails that are unsorted in lots of 10-50,000 at one

11  time").

12      Nowhere, in contrast, do Plaintiffs allege that they had to increase server capacity,

13  hire customer service representatives, or spend money to implement spam filters.

14  Plaintiffs do not claim, and certainly do not present any evidence, that they lost money,

15  experienced system downtime, or that any business was otherwise adversely affected as a

16  result of receiving Defendants' alleged email messages.  The time invested by Plaintiffs

17  in intentionally gathering alleged spam emails from their clients in preparation for

18  litigation is obviously not the sort of adverse impact that Congress had in mind when

19  drafting CAN-SPAM.

20      If Plaintiffs had left the messages in the junk mail folders, then they would not

21  have seen the messages and likely would not have known the messages were sent.

22  Plaintiffs were not adversely affected by the violations they allege, and therefore do not

23  having standing the bring the claims alleged herein.  Indeed, Plaintiffs admit in their

24  responses to requests for admission that they were not adversely affected by Defendants'

25  alleged emails.  See Newman Decl. ¶ 6, Ex. C at 2:7-8.  The Motion on the CAN-SPAM

26  claims should be denied on that basis alone.

27      Moreover, even if Plaintiffs experienced some adverse effect, (which they did not,

28  and failed to offer any evidence to demonstrate otherwise),  Plaintiffs themselves, rather

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C -  10

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   than Defendants, were the proximate cause of those effects. Plaintiffs admit they signed

2   up to receive the emails upon which they base their claims. *See* Gordon Decl. ¶ 11;

3   Declaration of Michael Shopmaker in Support of Defendants' Motion for an Undertaking

4   ¶¶ 20-22 (users of the email addresses at james@gordonworks.com,

5   faye@gordonworks.com, jamila@gordonworks.com, jonathan@gordonworks.com,

6   jay@gordonworks.com, emily@gordonworks.com, msm@gordonworks.com, and

7   jim@gordonworks.com all affirmatively consented to receive emails from Virtumundo or

8   one of its registration partners).  Plaintiffs do not allege that they ever sought to

9   unsubscribe from Virtumundo "using a mechanism provided pursuant to [the statute] not

10  to receive some or any commercial electronic mail messages from" Defendants. *See* 15

11  U.S.C. § 7704(a)(4)(A).  Given that Plaintiffs opted-in to Defendants' mailings, and

12  never opted-out through the means provided, they (and not Defendants) are liable for any

13  adverse effects they may have suffered.

14
    **C.  Defendants qualify for the safe harbor because the alleged "from" lines**
15  **identify the sender of the message.**

16      The "from name" entries that Plaintiffs allege Defendants used are neither false

17  nor misleading, but accurate and significantly more useful to the recipient than the names

18  Plaintiffs suggest.  Defendants are alleged to have used domain names that are registered

19  to them, together with text that identifies the subject of the email.  With this information,

20  recipients can identify the name, address, and phone number of the sender, and from the

21  "from" line alone know the email is commercial in nature.

22      Plaintiffs propose a *per se* rule that Congress did not provide where the full legal

23  name of the individual who sends an email would have to be included in the "from" line.

24  Plaintiffs' argument fails on several levels.  15 U.S.C. § 7704(A)1(b) provides that "a

25  'from' line (the line identifying or purporting to identify a person initiating the message)

26  that accurately identifies any person who initiated the message shall not be considered

27  materially false or materially misleading".  This "safe harbor" does not require that such

28  identification be in any particular field in the "from" line, only that the "from" line as a

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 11

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   whole accurately identify the sender.

2       To determine whether Defendants fall within this safe harbor, the court must

3   identify what it means for a person to be "accurately identified" in a "from line." An

4   email address must be unique in order to function, while the names of entities and natural

5   persons can be shared by literally millions of people around the globe. Consequently, an

6   email address is far more useful than a person's name, provided the email address is at a

7   domain name registered to the person initiating transmission of the email.

8       Congress passed CAN-SPAM to combat commercial marketers that hide their

9   identities. By using a domain name registered to it, a sender allows the recipient to

10  obtain the sender's address and phone number from the publically available WHOIS

11  database. A "from" line that contains the sender's actual email address "accurately

12  identifies" the person who initiated the message for the purpose of 15 U.S.C. §

13  7704(A)1(b).

14      In this case, Virtumundo is alleged to have sent messages from its own domain

15  names, which are noted in each "from" line and which route to them. Defendants use

16  email addresses in the from line which routes to them. The domain names associated

17  with the email addresses are listed in the WHOIS database. The WHOIS database returns

18  accurate contact information for Defendants in response to each query of Defendants'

19  domain names. Defendants accurately identify themselves in the "from" lines of their

20  emails. As a result, those "from" lines cannot possibly be considered materially false or

21  materially misleading. Defendants therefore qualify for the safe harbor which provides "a

22  'from' line . . . that accurately identifies any person who initiated the message shall not

23  be considered materially false or materially misleading".

24      A contrary conclusion would elevate form over substance and run counter to the

25  concerns underlying CAN-SPAM. For example, "John Smith" would be acceptable

26  under Plaintiffs' construction, even if his email address were jsmith@yahoo.com (which

27  would require the recipient to subpoena Yahoo to learn John Smith's address and phone

28  number). Conversely, the safe harbor would not apply to a sender who uses its accurate

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 12

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    domain name in its email address (*e.g.*, CriminalJustice@vmmail.com), is listed in the

2    WHOIS database, and clearly identifies itself in the message.  Pursuant to the policy

3    underlying the CAN-SPAM requirement, namely disclosure of the sender, Defendant

4    qualifies for the safe harbor.

5        The plain language of the statute compels this interpretation.  It is also consistent

6    with Congressional intent in the definition of the term "materially":

7            the term "materially", when used with respect to false or misleading header
             information, includes the alteration or concealment of header information in
8            a manner that would impair the ability of an Internet access service processing
             the message . . . or a law enforcement agency to identify, locate, or respond to
9            a person who initiated the electronic mail message or to investigate the alleged
             violation, or the ability of a recipient of the message to respond to a person
10           who initiated the electronic message.

11   15 U.S.C. 7704(a)(6). The "from name" fields in Defendants' emails in no way impair the

12   ability of a recipient (or anyone else) to locate them.  In most cases with commercial

13   email, the "from name" field does not provide useful information because the sender is

14   unknown to the recipient.  For example, a "from name" field of "William A. Worker"

15   would provide no real information to a consumer.  On the other hand, the "from name" of

16   "Criminal Justice" (accompanied by Virtumundo's domain name) in connection with a

17   message advertising jobs in criminal justice puts the recipient on notice of the nature of

18   the message.

19       Further, CAN-SPAM's prohibition against materially false and materially

20   misleading header information is not specific as to information contained in the "from"

21   line, but applies to header information as a whole.

22           The term 'header information' means the source, destination, and routing
             information attached to an electronic mail message, including the originating
23           domain name and originating electronic mail address, and any other
             information that appears in the line identifying, or purporting to identify, a
24           person initiating the message.

25   15 U.S.C. § 7702 (8).  Plaintiffs' contention that the "from name" field must be analyzed

26   independently, outside the context of the entire email header, is inconsistent with the Act.

27   In fact, the term "from name" is not contained within the text of CAN-SPAM.  The issue

28   the court must decide is whether the *header information, as a whole*, is materially false

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 13

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   and misleading.  Defendants' header information, which informs a recipient of the

2   general subject of the email and permits Defendants to be easily located, is neither false

3   nor misleading.

**D.     CAN-SPAM does not require the "from name" to consist of a sender's "actual" name.**

6        Plaintiffs place great emphasis on a rhetorical effort to establish that Congress

7   intended CAN-SPAM to require the use of a sender's "actual" name in the "from name"

8   field.  Even a cursory review of the statute reveals that Plaintiffs' argument fails because

9   Congressional intent is clear.  "One determines what Congress would have done by

10  examining what it did."  *See* <u>Legal Services Corporation v. Velazquez</u>, 531 U.S. 533, 560

11  (2001) (Scalia, J., dissenting).

12       CAN-SPAM contains no requirement that the actual name of a person be

13  contained in the "from name" portion of the from line, and no such requirement is found

14  in the legislative history of the Act.  In truth, there is no requirement in CAN-SPAM that

15  the "from name" (as opposed to the "from line") field contain any information at all; a

16  sender is free to simply leave it blank. *Any* descriptive information in the "from name"

17  field exceeds the CAN-SPAM requirement.

18       Interpreting a federal statute requires two steps.  First, the court must determine

19  whether Congress has directly spoken to the precise question at issue.  <u>New Edge</u>

20  <u>Network, Inc. v. FCC</u>, 461 F.3d 1105, 1111 (9th Cir. 2006). If the intent of Congress is

21  clear, the inquiry ends; the court "must give effect to the unambiguously expressed intent

22  of Congress." <u>Id</u>. (citations omitted)  Second, "if the statute is silent or ambiguous with

23  respect to the specific issue, the question for the court is whether the [plaintiff's position]

24  is based on a permissible construction of the statute." <u>Id</u>.

25      **1.     Congress clearly did not intend to require a "from name".**

26       Plaintiffs assert "the accurate identification of the *actual sender* of a commercial

27  electronic email message in the 'header' portion of that email is both required under, and

28  central to, Congress's scheme to regulate commercial email." (Motion at 5:20-23)

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 14

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    (emphasis added). This is not, however, what CAN-SPAM provides. The relevant portion

2    of the Act, Section 7704, provides in pertinent part,

> It is unlawful for any person to initiate the transmission, to a protected
> computer, of a commercial electronic mail message . . . that contains, or is
> accompanied by, header information that is materially false or materially
> misleading. For purposes of this paragraph . . . (B) a "from" line (the line
> identifying or purporting to identify a person initiating the message) that
> accurately identifies any person who initiated the message shall not be
> considered materially false or materially misleading

7    15 U.S.C. § 7704 (a) (1).

8          In the Act, Congress addressed the precise question at issue.  It declined to require

9    the actual name of the sender in the "from name" field of the header. There is nothing

10   ambiguous in CAN-SPAM or its safe harbor for those who accurately identify themselves

11   in the "from" line.  The safe harbor does *not* require a sender to accurately identify itself

12   in the "from name" field; it provides a safe harbor for those senders who accurately

13   identify themselves in the "from" line.  The term "from name" never appears in CAN-

14   SPAM. Given this unambiguous language, the intent of Congress is clear, and the inquiry

15   into interpretation ends. The construction that Plaintiffs urge contradicts the clear intent

16   of Congress.

17
            **2.      Plaintiffs' position is not based on a permissible construction of the
18                    statute.**

19         Plaintiffs conclude the "from name" field must contain the "actual name" of the

20   sender because of the Section 7704(a)(1)(B) safe harbor.  This conclusion is a logical

21   error known as the "vacuous implication" or "denying the antecedent".  It takes the form

22   of an assertion that "if a, then b" compels the conclusion "if not a, then not b." Plainly,

23   this is not the case.

24         Congress wrote express language into the Act that identifying a sender in the

25   "from" line means the "from" line is *not* misleading.  This does not mean the converse is

26   true.  Congress did not intend to provide that *failing* to identify oneself in the "from" line

27   *is* misleading, or it would have so provided.  The existence of the safe harbor makes clear

28   that CAN-SPAM does not require a sender's actual name in the "from" line.  To conclude

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 15

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  otherwise would render 15 U.S.C. § 7704(a)(1)(B) superfluous.

2      Also, the Act applies to one who "initiates the transmission" of emails within the

3  scope of the Act. "[M]ore than one person may be considered to have initiated a

4  message." 15 U.S.C. § 7702(9). Since there may be more than one initiator, Plaintiffs'

5  contention leads to the conclusion that to comply a "from name" might have to be an

6  unwieldy list of all senders in the event more than one person initiated a message. This is

7  not a hypothetical issue. Plaintiffs' theories lead to confusion, rather than clarity, as to

8  who precisely should be in Plaintiffs' "from name". Plaintiff itself identifies this issue

9  but offers no solution to it (Motion 3:15). The Federal Trade Commission (the "FTC"),

10 however, which has a primary enforcement role over CAN-SPAM, has proposed a

11 workable solution to this issue. See, 70 Fed. Reg. 25426, 25452 (May 12, 2005)

12 (Proposed Rule) (Proposed § 316.2(m), addressing when more than one person's products

13 or services are advertised or promoted in a single electronic mail message). Plaintiffs'

14 proposed solutions are utterly unworkable from a practical standpoint, and inconsistent

15 with the rule the FTC proposes.

16     Moreover, 15 U.S.C. § 7702 (16)(B) provides that senders and initiators may use

17 the name of a line of business or a division to identify themselves. In this case,

18 Defendants' "from name" entries such as "criminal justice" are not "advertising copy," as

19 Plaintiffs repeatedly contend, but rather represent Defendants' business lines. See

20 Shopmaker Decl. ¶ 11.

21     Congress spoke expressly when it provided that a header may not be materially

22 false or misleading. The "from" line is but a small portion of the header information.

23 Congress did not provide that the "from" line contain an accurate "from name". Instead,

24 Congress wrote a safe harbor providing that an accurate "from" line would render the

25 header information compliant. By "denying the antecedent" and writing in a requirement

26 that Congress did not, Plaintiffs are improperly construing the statute, and their position

27 must fail. Further, Congress delegated to the FTC the role of developing further rules and

28 guidance for the regulated community. Congress deliberately denied private parties, such

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 16

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    as the present plaintiffs, a right of action under CAN-SPAM.  Consequently, the regulated

2    community is spared litigation costs of the type Plaintiffs presently impose upon these

3    Defendants.

**E.    Plaintiffs' state law claims do not establish any violation of CEMA, and CAN-SPAM preempts Plaintiffs' CEMA argument.**

6        Plaintiffs assert that Defendants' emails violated Washington's Commercial

7    Electronic Mail Act, RCW 19.190 et seq. ("CEMA").  In particular they allege a violation

8    of RCW 19.190.020 which prohibits transmitting a commercial email message that

9    "misrepresents or obscures any information in identifying the point of origin" of the

10   message.  Plaintiffs contend that Defendants' failure to include their employees' legal

11   names or their full corporate name in the "from name" field "misrepresents or obscures"

12   information in identifying the point of origin.

13       Plaintiffs' argument must fail given the ease with which Defendants can be

14   located – not only by performing a simple WHOIS lookup regarding the domain names

15   from which the emails are sent, but by merely opening the emails themselves.

16   Defendants' names and addresses are clearly set forth in each email they send.  To the

17   extent, if any, that CEMA purports to prohibit information in the "from name" field, it

18   prohibits immaterial misrepresentations and falsehoods and is preempted by CAN-SPAM.

19       Congress intended CAN-SPAM to create a single national standard for commercial

20   email, and to that end it preempts state laws, subject to a narrow exception:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

24   15 U.S.C. 7707(b)(1).  Further, the following congressional finding is part of

25   CAN-SPAM:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements.  As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 17

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    geographic location, it can be extremely difficult for law-abiding businesses
2    to know with which of these disparate statutes they are required to comply.

3    15 U.S.C. 7701(a)(11).

4    In <u>Omega World Travel, Inc. v. Mummagraphics, Inc.</u>, 469 F. 3d 348 (4th Cir.
5    2006), the Fourth Circuit considered the CAN-SPAM preemption clause in relation to an
6    Oklahoma law that prohibits, among other things, sending a commercial email that
7    "misrepresents any information in identifying the point of origin or the transmission path
8    of the electronic mail message." This is virtually identical to the CEMA provision upon
9    which Plaintiffs rely. The district court ruled that the Oklahoma statute created a cause of
10   action for immaterial errors, and was preempted. The Fourth Circuit affirmed, reasoning
11   "[r]ather than banning all commercial e-mails or imposing strict liability for insignificant
12   inaccuracies, Congress targeted only e-mails containing something more than an isolated
13   error." <u>Omega World Travel, Inc. v. Mummagraphics, Inc.</u>, *supra*, 469 F.3d at 348.

14   The court thus held that permitting claims under state law for immaterial errors
15   would subvert Congress' intent to create a national standard:

16   In sum, Congress' enactment governing commercial e-mails reflects a calculus
     that a national strict liability standard for errors would impede "unique
17   opportunities for the development and growth of frictionless commerce," while
     more narrowly tailored causes of action could effectively respond to the
18   obstacles to "convenience and efficiency" that unsolicited messages present.

19   <u>Id.</u> Like the Oklahoma statute, CEMA is preempted to the extent it purports to impose
20   liability for minor errors that do not impede the ability of a recipient to locate the sender.
21   Defendants' alleged "from" lines are not false or misleading, but even if they were, the
22   errors would be immaterial given the ease with which Defendants can be located from the
23   email address or the content of the email in any given instance.  Messages do not violate
24   the statute's accuracy requirements when the messages provide numerous methods to
25   identify, locate, and respond to the senders. <u>Omega World Travel</u>, *supra*, 469 F. 3d 348.

26   Even if CEMA were not preempted by CAN-SPAM, Plaintiffs fail to meet their
27   burden as to their CEMA claims.  Plaintiffs provide no analysis or reference to relevant
28   judicial authority supporting their interpretation of the state statute.  In the only decisions

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 18

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  regarding CEMA, Washington courts held that *subject* lines transmitted with commercial

2  email were deceptive when a recipient was forced to open the message to identify

3  unwanted commercial email. <u>State v. Heckel</u>, 122 Wn. App. 60 (Heckel II) (2004).  In

4  that case, the Washington Attorney General brought suit against an Oregon resident,

5  Jason Heckel, alleging violations of the CEMA prohibitions involving two subject lines:

6  "Did I get the right e-mail address?" and "For your review - HANDS OFF!" <u>Id</u>. at 71.

7  The Heckel II court held that those subject lines when transmitted with unsolicited

8  commercial email were deceptive because they were designed to entice the recipient to

9  open the message based on the mistaken belief that the message might be from a friend or

10  acquaintance, or business contact.  <u>Id</u>. at 71.  Similarly, in an earlier decision in that case,

11  the Washington Supreme Court characterized  the sending of commercial email with

12  deceptive subject lines as shifting costs to consumers by making it "virtually impossible

13  to distinguish spam from legitimate personal or business messages." <u>State v. Heckel</u>, 143

14  Wn.2d 824, 835 (Heckel I), *cert. denied*, 534 U.S. 997 (2001).

15       By this standard, Defendants' "from" lines are not deceptive or misleading.

16  Rather, Defendants' "from" lines clearly inform recipients that the messages are

17  commercial solicitations.  In some cases, Defendants provide the actual name of the

18  business entity on whose behalf the message is initiated.  In other cases, they provide the

19  name of the line of business to which the message pertains.  Unlike the <u>Heckel</u> subject

20  lines, no reasonable person would believe that a message from "CriminalJustice" is a

21  personal message.  Accordingly, Plaintiffs' CEMA claims fail.

22       Plaintiffs do nothing more than make a general reference to the emails attached to

23  the Gordon Declaration combined with a vague assertion that Defendants' "from" lines

24  violate CEMA. This does not meet Plaintiffs' burden of showing that there is no genuine

25  issue as to any material fact.  Plaintiffs' Motion should be denied.

26  **F.      Plaintiffs fail to establish that Defendants are the initiators of the emails**

27       As described in the Motion for an Undertaking, Plaintiffs have filed numerous

28  emails with the Court from <msdsa.com>, <prefersend.com>, or <ew01.com>, which

---

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 19

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   purportedly form the basis of their claims.  Defendants did not initiate those messages,

2   nor do those messages have any relationship to Defendants. *See* Declaration of Michael

3   R. Geroe in Support of Motion for an Undertaking at ¶¶ 20, 21 (Dkt. No. 39) and

4   Exhibits thereto (Adknowledge did not send or initiate emails from <msdsa.com>,

5   <prefersend.com>, or <ew01.com>); Declaration of Michael Shopmaker in Support of

6   Motion for an Undertaking at ¶¶ 23, 24 (Dkt. No. 40) and Exhibits thereto (Virtumundo

7   did not send or initiate emails from <msdsa.com>, <prefersend.com>, or <ew01.com>);

8   Townsend Decl. (Dkt. No. 41) and Exhibits P, Q & R thereto (Defendants are not the

9   registrants of <msdsa.com>, <prefersend.com>, or <ew01.com>).

10      Plaintiffs have failed to establish that Virtumundo sent the 7,890 emails described

11  in their Motion.  There is no representation, for example, that all such emails included

12  return addresses at domain names registered to Virtumundo.  Simply attaching thousands

13  of emails to a declaration and alleging that they violate CAN-SPAM is wholly

14  insufficient to meet Plaintiffs' burden of establishing that there are no disputed issues of

15  material fact.

16  **G.    Plaintiffs' purported evidence is inadmissible and should be stricken**

17      Although a certain amount of rhetorical hyperbole is expected in our adversarial

18  system, such rhetoric becomes improper when it crosses the line into false statements of

19  fact.  Plaintiffs cross that line many times in the Motion, repeatedly asserting, incorrectly,

20  that there are no disputed issues of material fact that would preclude summary judgment.

21  (*see*, *e.g.*, Motion 2:2 ("[t]he material facts of this matter are uncontested"); id. at 5:8

22  ("there are no material facts in dispute"). Plaintiffs make little effort to educate

23  Defendants and the Court about those facts, in most cases failing to cite to specific

24  evidence (or any evidence).  In other cases, Plaintiffs cite inadmissible hearsay or

25  speculation. Few, if any, of the "relevant facts" identified by Plaintiffs are supported by

26  citations to any evidence that might demonstrate their supposed uncontested status.

27  Rather, Plaintiffs refer generally to Exhibit A of the Declaration of James S. Gordon, Jr.

28  in support of the Motion (the "Gordon Decl."), which consists of thousands of pages of

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 20

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  printouts of emails allegedly sent by Defendants to Plaintiffs.

2      Plaintiffs make no effort beyond the stack of alleged emails to establish that each

3  (or any) of the 7,890 emails upon which they base their claims was sent by Defendants,

4  was received by Plaintiffs, or fails to identify an actual sender in its "from" line.

5  Plaintiffs are even unclear as to the number of emails underlying their claim.  See Gordon

6  Decl.¶ 26.  This falls far short of the showing required to warrant summary judgment in

7  Plaintiffs' favor.  Defendants therefore object to Plaintiffs' purported evidence, as set

8  forth in **Exhibit A** attached to this memorandum.  Defendants hereby move to strike the

9  Gordon declaration in its entirety, or in the alternative move to strike each piece of

10  evidence identified in the attached Exhibit A.

11                      **IV.  CONCLUSION**

12      "The CANSPAM Act addresses 'spam' as a serious and pervasive problem, but it

13  does not impose liability at the mere drop of a hat."  <u>Omega World Travel</u>, *supra*, 469 F.

14  3d 348.  Yet, Plaintiffs seek over ten million dollars based upon a hyper-technical

15  argument about an immaterial description in an email "from" line that CAN-SPAM does

16  not forbid.

17      In trying to educate the court about CAN-SPAM, Plaintiffs ignore the point that

18  CAN-SPAM does not prohibit commercial email; it merely regulates it.  Congress makes

19  clear in the very first paragraph of CAN-SPAM that the statute was passed in order to

20  facilitate the transmission of commercial email through acceptable means.  The Act sets

21  forth the construction and mandate defining those acceptable means, and Defendants

22  comply.  Plaintiffs' behavior illustrates they have no interest in actually stopping emails

23  from reaching their inbox, but rather they seek to use CAN-SPAM and CEMA to extract

24  settlement payments from law abiding commercial email businesses such as Defendants.

25      Plaintiffs fail to establish that there are no disputed issues of material fact and that

26  they are entitled to judgment as a matter of law. Plaintiffs' Motion consists almost

27  entirely of rhetoric rather than legal argument. Plaintiffs do not identify the elements of

28  the causes of action for which they seek to recover, do not identify undisputed evidence

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C - 21

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   that establishes each such element, do not authenticate the emails for which they seek to

2   recover, and do not establish that each of those emails contains materially false or

3   materially misleading header information. To the extent that Plaintiffs' motion is

4   considered for summary adjudication of a single novel legal theory – whether CAN-

5   SPAM requires an actual name in the "from name" field - Plaintiffs urge an expansive

6   interpretation of CAN-SPAM that is inconsistent with the policy concerns underlying the

7   Act.  Plaintiffs' position is unsupported by the plain language of the Act and is in any

8   case inapplicable to Plaintiffs' emails, which accurately identify the sender.

9        Plaintiffs fail to meet their burden and, accordingly, Defendants respectfully

10  request the Court deny the Motion.

11       DATED this 8th day of January, 2007.

12

13                                 **NEWMAN & NEWMAN,**
                                    **ATTORNEYS AT LAW, LLP**

14

15       By:   _____
                Derek A. Newman, WSBA No. 26967
16              Roger M. Townsend, WSBA No. 25525

17              Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28

DEFS.' OPP'N TO MOT. FOR
PARTIAL SUMM. J.
CASE NO. CV06-0204C -  22

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800