The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| JAMES S. GORDON, Jr., a married individual, d/b/a 'GORDONWORKS.COM'; OMNI INNOVATIONS, LLC., a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>VIRTUMUNDO, INC, a Delaware corporation d/b/a ADNOWLEDGEMAIL.COM; ADKNOWLEDGE, INC., a Delaware corporation, d/b/a ADKNOWLEDGEMAIL.COM; SCOTT LYNN, an individual; and JOHN DOES, 1-X,<br><br>Defendants. | NO. CV06-0204JCC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR AN UNDERTAKING PURSUANT TO 15 U.S.C. § 7706(g)(4)**<br><br>NOTE ON MOTION CALENDAR: January 12, 2007<br><br>CONFIDENTIAL INFORMATION |

## I. INTRODUCTION

In their Motion for an Undertaking ("Motion") (Dkt. No. 38), Virtumundo, Inc., Adknowledge, Inc., and Scott Lynn (collectively, "Defendants") argued Plaintiffs are unlikely to prevail at trial under their CAN-SPAM claims because they are seeking damages for emails which conform to CAN-SPAM. Plaintiffs did not file an opposition to the Motion and it should be granted as unopposed. To the extent this Court deems

DEFS.' REPLY RE MOT. FOR AN UNDERTAKING - 1 (CV06-0204JCC) | **NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP** | 505 Fifth Ave. S., Ste. 610 Seattle, Washington 98104 (206) 274-2800

Dockets.Justia.com

Plaintiffs having responded to the Motion at all, the Court can only rely on Plaintiffs' motion for *partial* summary judgment based upon the novel theory that: "The information the Defendant [sic] placed in the 'From' line of these emails does not accurately identify the sender of the emails." (Dkt. #53 at 2:13-14.) Plaintiffs allege, without legal support, the "from" lines in Defendants' alleged emails violate 15 U.S.C. § 7704(a)(1) (prohibiting delivery of emails containing "false or misleading transmission information"). (Id. at 14:21 - 15:2.)

Plaintiffs' motion for partial summary judgment is not sufficient to defeat Defendants' Motion for an Undertaking. Plaintiff Gordon's testimony does not provide factual support for his legal interpretation of CAN-SPAM. In his deposition testimony early this week, Gordon testified he was never misled by any "from" lines in any of the emails produced in this lawsuit, and cannot identify any false information in the email "from" lines he alleges Defendants sent. This testimony refutes the only substantive argument Plaintiffs have provided in support of their claims.

Plaintiffs novel "from line" theory notwithstanding, Plaintiffs have not advanced – in their motion for Partial Summary Judgment or otherwise – factual support for each of the elements of a CAN-SPAM claim. For example, Plaintiffs' do not advance factual support for their claim that they are an Internet Access Service (IAS). The record indicates Defendants are reasonably likely to be the prevailing party in Plaintiffs' CAN-SPAM claims. Accordingly, Defendants respectfully request this Court grant Defendants' unopposed Motion for an Undertaking and require Plaintiffs to post an undertaking in the amount of $350,000, as security for a potential award of fees and costs to the prevailing party pursuant to 15 U.S.C. § 7706(g)(4).

## II.    FACTS AND ARGUMENT

### A.    Plaintiffs do not provide evidence or arguments concerning any other alleged violations of CAN-SPAM.

In their Motion, Defendants argued that Plaintiffs had not provided any evidence of emails which violate any of the five relevant subsections of CAN-SPAM:

DEFS.' REPLY RE MOT. FOR AN UNDERTAKING - 2 (CV06-0204JCC)

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1.  The email contains false or misleading transmission information. 15 U.S.C. 7704(a)(1);

2.  The email contains deceptive subject headings. 15 U.S.C. 7704(a)(2);

3.  The email fails to include a return address or comparable mechanism. 15 U.S.C. 7704(a)(3);

4.  The email continues after an objection later than ten (10) days after made "in a manner specified in the message" 15 U.S.C. 7704(a)(3)(A) & (4); or

5.  The email fails to include an identifier, opt-out, and physical address. 15 U.S.C. 7704(a)(5).

(Motion at 3:21 - 4:1.) Plaintiffs failed to respond to Defendants' Motion. Instead, they filed a summary judgment motion limited to a discussion of allegedly misleading "from" lines. (Dkt. #53.) Accordingly, Plaintiffs have conceded they have no evidence Defendants ever violated any of the other four subsections listed above. Pursuant to local rules, this Court may construe Plaintiffs' failure to oppose Defendants' arguments as a concession that those arguments have merit. LR 7(b)(2).

**B.  Gordon admits he was not misled by any "from" lines and cannot identify any false information in them.**

On January 9, 2007 and January 10, 2007, Defendants deposed Plaintiff Gordon (on his own behalf and as the Fed. R. Civ. P. 30(b)(6) designee for Plaintiff Omni Innovations) in the above-captioned lawsuit. (Declaration of Derek A. Newman in Support of Defendants' Motion for an Undertaking ("Newman Decl.") ¶ 2.) Gordon's testimony refutes the only alleged factual basis for Plaintiffs' lawsuit.

At his deposition, Gordon admitted he generally does not look at "from" lines. (Newman Decl. ¶ 2 Ex. A at 374:6-8.) Obviously, he could not have been misled by words he never read in the first place. Moreover, when Gordon reviewed "from" lines at his deposition, he admitted they did not contain any false or misleading information. For example, he admitted an email with a "from" line providing "closet organizer" actually assisted him in his determination that the email advertised a closet organizer. (Id. ¶ 2 Ex. A at 367:21 - 368:4.) Likewise, Gordon admitted he was able to determine that an email

1  which had "closet organizer" in the "from" line, was commercial in nature. (Id. ¶ 2 Ex. A
2  at 370:2-12.) He admitted an email with the "from" line "Best Virus Defense" "doesn't
3  look [like a] personal [email]." (Id. ¶ 2 Ex. A at 371:19 - 373:23.) He admitted an email
4  which mentioned First Premiere Bank in the "from" line was not misleading, since that
5  email was sent on First Premiere Bank's behalf. (Id. ¶ 2 Ex. A at 437:17-24.)

6  Counsel for Defendants asked Gordon the following question: "Did any of the
7  'from' lines in emails that [Defendants] Virtumundo or Adknowledge sent you confuse
8  you?" (Newman Decl. ¶ 2 Ex. A at 374:18-19.) Initially, Gordon answered "yes", but he
9  could not provide any specific examples. (Id. ¶ 2 Ex. A at 375:5-9.) Ultimately, Gordon
10 conceded he was not misled by any of the "from" lines he identified in this lawsuit. (Id.
11 ¶ 2 Ex. A at 388:5-7.)

12 **C.     Gordon's testimony indicates this lawsuit is frivolous.**

13 Gordon admits he may have "indirectly" subscribed to receive emails from
14 Defendants. (Newman Decl. ¶ 2 Ex. A at 127:13-17.) However, he also admits he is
15 unaware of any evidence which supports his claim to have unsubscribed from
16 Defendants' mailing lists. (Id. ¶ 2 Ex. A at 402:18 - 403:9.) He even concedes he may
17 have "inadvertently resubscribed" to Defendants' mailing lists while "doing
18 reconnaisance" for this lawsuit. (Id. ¶ 2 Ex. A at 454:10 - 455:12.) In other words,
19 Gordon seeks damages for allegedly <u>un</u>solicited commercial email he admits he may have
20 solicited. He is suing Defendants for failing to remove him from their mailing lists, even
21 though he may have asked to <u>be</u> on those mailing lists, and has no evidence he ever
22 requested to unsubscribe from them.

23 Throughout his deposition, Gordon affirmed his carelessness regarding discovery
24 matters. He testified he did not conduct a thorough search for relevant documents
25 because "it could have taken a week or two" and he had "other things to do." (Newman
26 Decl. ¶ 2 Ex. A at 403:7 - 404:6.) He concedes he possesses computer disks he has "not
27 looked at" which may contain relevant emails, and does not "have a clue what's on" those
28 disks. (Id. ¶ 2 Ex. A at 403:15 - 405:17.)

Gordon's testimony indicates that for years his sole source of income has been the settlement of lawsuits (and before that, he received state unemployment benefits). (Newman Decl. ¶ 2 Ex. A at 31:12 - 32:21; 45:21-23; 46:20-22.) He currently has at least seven (7) active CAN-SPAM lawsuits in this district alone. (Motion at 7 n. 1.) Given his clear intent to profit from the receipt of allegedly unsolicited emails, it is not surprising that he refuses to block those emails even though he admits he has the ability to do so. (Newman Decl. ¶ 2 Ex. A at 413:5 - 414:10.) Gordon's utter disregard of his discovery obligations, combined with his status as a professional plaintiff and the frivolousness of this lawsuit, provide a substantial justification to grant the requested undertaking.

**D.   Gordon admits he does not provide email services, and therefore the plaintiffs cannot be an Internet access service.**

The plaintiffs lack standing to sue under CAN-SPAM unless they qualify as an Internet access service. 15 U.S.C. § 7706. The plaintiffs' motion for summary judgment claims that status arises out of providing free email accounts to nine people. However, Gordon admitted in his deposition that he and Omni do not provide any email accounts. (Newman Decl. ¶ 2 Ex. A at 466:24-25 ("I don't provide e-mail accounts.").) Rather, his domain name registrar, GoDaddy.com provides the email services to these nine individuals:

> Q.  Does anybody currently, other than yourself, regularly use e-mail accounts at any domain that you provide?
>
> A.  Okay, the problem I'm having that the distinction of what Omni provides as opposed to what Godaddy provides, and that's not clear in my mind when you're asking about provides.
>
> Q.  Do you know the distinction between what Omni provides and what Godaddy provides?
>
> A.  A lot of it's blurred.
>
> * * *
>
> Q.  And in connection with your role as an Internet access service, do you provide e-mail accounts?
>
> A.  Okay. Domain names -- **the answer about e-mail accounts, as I understand your question, is no, I don't provide e-mail accounts**. Domain names are not provided by me. I'm not their registrar of domain names.

(Newman Decl. ¶ 2 Ex. A at 465:20-467:1 [emphasis added].) Since the plaintiffs admit

1  they do not provide the email accounts upon which their claim as an Internet access service is
2  based, the plaintiffs lack standing and cannot prevail under CAN-SPAM.

3  **III.    CONCLUSION**

4      Plaintiffs did not respond to Defendants' Motion for an Undertaking, and the
5  Court should conclude Plaintiffs concede pursuant to LR 7(b)(2).  Plaintiffs' claims are
6  frivolous and unlikely to prevail at trial.  Their silence with respect to four of the five
7  subsections of 15 U.S.C. § 7704(a) confirms their inability to support their claims based
8  upon those statutory requirements.  Gordon admitted in his deposition there is no factual
9  support for the sole remaining claim, and that he does not provide the email accounts that
10 allegedly qualify him for standing to sue.  All available evidence indicates Plaintiffs are in
11 the business of filing lawsuits solely for their settlement value, and are unwilling to honor
12 their discovery obligations under the Federal Rules of Civil Procedure. Requiring
13 Plaintiffs to post a bond will ensure payment of Defendants' attorney fees and costs in the
14 likely event this Court determines that Defendants are the prevailing party. Accordingly,
15 Defendants respectfully request this Court order Plaintiffs to post a bond for $350,000.00
16 as security in the event this Court awards Defendants their reasonable attorney fees and
17 costs.

18     DATED this 12th day of January, 2007.

19

20                     **NEWMAN & NEWMAN,**
                        **ATTORNEYS AT LAW, LLP**

21

22             By: _/s/ Derek Newman_
                  Derek A. Newman, WSBA No. 26967
                  Roger M. Townsend, WSBA No. 25525

23

                  Attorneys for Defendants

24

25

26

27

28