Gordon v. Virtumundo Inc et al Doc. 108

The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JAMES S. GORDON, Jr., a married individual, d/b/a 'GORDONWORKS.COM'; OMNI INNOVATIONS, LLC., a Washington limited liability company,

Plaintiffs,

v.

VIRTUMUNDO, INC, a Delaware corporation d/b/a ADNOWLEDGEMAIL.COM; ADKNOWLEDGE, INC., a Delaware corporation, d/b/a ADKNOWLEDGEMAIL.COM; SCOTT LYNN, an individual; and JOHN DOES, 1-X,

Defendants.

NO. CV06-0204JCC

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR: February 16, 2007

ORAL ARGUMENT REQUESTED

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

Dockets.Justia.com

# TABLE OF CONTENTS

**I. INTRODUCTION . . . . . . 1**

**II. ARGUMENT . . . . . . 2**

A. Plaintiffs have not met their burden in opposing Defendants' motion for summary judgment . . . . . . 2

B. Defendants' emails materially comply with CAN-SPAM and CEMA . . . . . . 3

1. The Linke Log is proper and admissible . . . . . . 3

2. Defendants' arguments and evidence are largely uncontested . . . . . . 4

3. Plaintiffs' attempt to create a disputed issue by inventing new requirements of CAN-SPAM or CEMA must fail . . . . . . 5

4. Plaintiffs' purported evidence pertaining to "unsubscribe" links is irrelevant, inadmissible hearsay . . . . . . 7

5. Plaintiffs fail to offer evidence that email was received ten days after an unsubscribe request made in the manner provided in an email . . . . . . 7

6. Plaintiffs' "from name" argument is belied by the declaration of their own expert . . . . . . 8

C. Plaintiffs were not adversely affected by a violation of CAN-SPAM . . . . . . 9

D. Plaintiffs do not provide an Internet access service . . . . . . 10

E. Plaintiffs fail to identify evidence indicating Scott Lynn is personally liable . . . . 12

**III. CONCLUSION . . . . . . 12**

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## I. INTRODUCTION

In their Motion for Summary Judgment (the "Motion", Dkt. No. 98), Defendants demonstrate that Plaintiffs cannot establish at least one essential element of each of their claims under CAN-SPAM (the "Act") and CEMA. Specifically, (i) Plaintiffs cannot establish that Defendants' emails violate either CAN-SPAM or CEMA in any material respect; (ii) Plaintiffs lack standing because they were not "adversely affected" by a violation of the Act; (iii) Plaintiffs also lack standing because they are not a provider of Internet access service or interactive computer service; and (iv) Plaintiffs named Scott Lynn in this lawsuit in bad faith.

Plaintiffs' response to the Motion (the "Response", Dkt. No. 104) fails to identify any specific facts showing there is a genuine issue. On most issues, Defendants' arguments remain wholly uncontested. For example, Plaintiffs fail to oppose Defendants' argument that its emails do not contain misleading transmission paths. On other issues, the "evidence" Plaintiffs now submit is wholly irrelevant to any material fact at issue in this action. For example, Gordon testifies in his declaration about a "hand-held mechanical device" he calls the "Goal Gauge" that he claims to have developed. On still other issues, Plaintiffs attempt to create disputed issues of material fact through Gordon's self-serving declaration contradicting his prior deposition testimony. For example, Gordon denies in his declaration that he "intentionally solicited commercial emails from defendants," notwithstanding his deposition testimony that he opted in to various email programs. Similarly, he attempts to recant clear and unequivocal testimony that he does not provide email services by now claiming "[m]y testimony in this section is inaccurate because I misunderstood the meaning of the word 'provide'". Plaintiffs fail to identify any evidence showing a disputed issue of material fact exists. Defendants are entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317 (1986); High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990).

///

///

///

///

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## II. ARGUMENT

### A. Plaintiffs have not met their burden in opposing Defendants' motion for summary judgment.

Plaintiffs fail to identify any email that violates CAN-SPAM or CEMA. In the Motion, Defendants proffer evidence including an extensive summary of the emails upon which Plaintiffs' claims are based. That evidence demonstrates that Defendants' emails comply with the requirements of CAN-SPAM and CEMA pertaining to header information and other matters in every material respect. Defendants' arguments are supported by recent case law from the Fourth Circuit (Omega World Travel, Inc. v. Mummagraphics, Inc., 469 F. 3d 348 (4th Cir. 2006)), the Supreme Court of Washington (State v. Heckel, 143 Wash. 2d 824 (2001)), and the Washington Court of Appeals (Benson v. Or. Processing Serv., 2007 Wash. App. LEXIS 31 (Wash. Ct. App. 2007)). Defendants explain in their Motion why Plaintiffs lack evidence to support their case. The burden now shifts to Plaintiffs to produce specific evidence, through affidavits or admissible discovery material, to show that a dispute exists. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). If they fail to meet this burden, summary judgment must be entered in Defendants' favor. Id.

In attempting to meet this burden, Plaintiffs may not rest upon the mere allegations or denials of their pleadings but must set forth *specific facts* showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis added). Moreover, "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir 1991), citing Foster v. Arcata Associates, 772 F.2d 1453, 1462 (9th Cir 1985), *cert denied*, 475 U.S. 1048 (1986). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Foster, *supra*, 772 F.2d at 1462. This rule applies to conflicts between affidavits and interrogatory responses as well as deposition testimony. School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir 1993).

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

Plaintiffs have not met their burden. In their Response, Plaintiffs continue to make the same broad, unsupported allegations as are in the First Amended Complaint (Dkt. No. 15) ("FAC"), while failing to address most of Defendants' arguments and evidence. Plaintiffs do not discuss *any* of the case law cited by Defendants, nor do they cite any contrary authority. Rather than pointing to specific evidence or law, Plaintiffs merely assert that various matters are disputed. This is insufficient to meet their burden, and Defendants' motion for summary judgment should be granted.

**B. Defendants' emails materially comply with CAN-SPAM and CEMA.**

**1. The Linke Log is proper and admissible.**

The Motion is supported by, among other things, a comprehensive summary of the first 18,859 emails provided by Plaintiffs in discovery (the "Linke Log", Dkt. Nos. 102-1 - 102-5). The Linke Log sets forth the <date>, <to>, <from>, <subject> and <reply-to> fields of each email, identifies each email's point of origin and transmission path, summarizes each email's content, and sets forth each email's full header. Plaintiffs object to the Linke Log because: 1) the Linke Log is allegedly not properly authenticated pursuant to Federal Rules of Evidence 901 (Response at 18:16-18); and 2) the original emails summarized in the Linke Log allegedly must be placed in evidence pursuant to Federal Rules of Evidence 1002. Id. at 19:16-22. Notably, Plaintiffs do not claim that the Linke Log is in any way inaccurate. Plaintiffs' objections are without merit, and the Linke Log may properly be considered by the Court.

Plaintiffs allege that "Mr. Linke does not even claim to have first hand knowledge of all the materials placed in the logs," (Response at 19:2-3). However, as set forth in Mr. Linke's declaration (quoted by Plaintiffs themselves), Mr. Linke personally "reviewed and corrected" the work of the contract attorneys who prepared the log. (Response at 19:8-10, citing Linke Decl., Dkt. No. 102, ¶ ¶ 7, 8 and 11). This process required comparing each email to the summary contained in the Linke Log, and therefore required Mr. Linke to personally review each of the 18,859 emails summarized in the Linke Log. *See* Declaration of Derek Linke in Support of Reply to Response to Defendants' Motion for Summary Judgment, filed concurrently herewith, at ¶ 2. Pursuant to Rule 901, the authentication requirement "is satisfied by evidence sufficient to

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

support a finding that the matter in question is what its proponent claims." Mr. Linke's declaration satisfies this standard, and the Linke Log is properly authenticated.

The Linke Log constitutes a summary of documents provided by Plaintiffs. Plaintiffs cite Rule of Evidence 1002 in contending the Linke Log is not evidence of the original, but an original is not required to prove the content of a writing when "otherwise provided in these rules". Fed. R. Evid. 1002. Rule 1006, in turn, provides,

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006. The Linke Log summarizes over 20,000 pages of emails, which certainly qualify as "voluminous writings…which cannot conveniently be examined in court." Further, the documents summarized were produced by Plaintiffs and the originals (both electronic and paper) have been available to Plaintiffs at all times during this litigation.

**2. Defendants' arguments and evidence are largely uncontested.**

The Linke Log demonstrates that Defendants' emails comply with the requirements of CAN-SPAM and CEMA pertaining to headers, transmission paths and subject lines in every material respect. As to the matters discussed below, Plaintiffs do not cite any evidence or authority to counter Defendants' claims, which consequently stand unopposed. Summary judgment should be granted as to those issues.

It is undisputed that Defendants' emails do not contain false or misleading subject lines. CAN-SPAM imposes liability only if a subject heading would be likely to mislead a recipient acting reasonably under the circumstances. 15 U.S.C. § 7704(a)(2). This requires consideration of the subject heading in context. Omega World Travel, Inc. v. Mummagraphics, Inc., 469 F. 3d 348 (4th Cir. 2006). Plaintiffs do not identify any email message which would mislead any reasonable person by the "subject" line when considered in context, that is, in connection with the information contained in the "from" line. *See* Motion at 20:26-23:18. Defendants' Motion thus stands uncontested with respect to whether Defendants' emails contain false or misleading subject lines, and the Motion should be granted with respect to that issue.

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

It is also uncontroverted that Defendants' emails do not contain misleading transmission paths or header information. In Benson v. Or. Processing Serv., 2007 Wash. App. LEXIS 31 (Wash. Ct. App. 2007), the Washington Court of Appeals held that when an email identifies the sender's domain name, physical address and telephone number and contains an "unsubscribe link", the email does not misrepresent or obscure any information identifying its point of origin or transmission path. Id. Defendants have established that their emails meet these criteria. *See* Motion at 26:21-27:16. Plaintiffs do not contest Defendants' arguments pertaining to header information or transmission paths except insofar as the "from name" part of the "from line" does not contain the name of a person. Accordingly, at a minimum, Defendants' Motion should be granted with respect to Plaintiffs' claims under both CAN-SPAM and CEMA insofar as such claims are based on allegedly false or misleading header information other than that contained in the "from" line (which claims are addressed below).

Finally, Plaintiffs do not contest that Defendants' emails do not use third party domain names without permission of the third party. Plaintiffs' FAC alleges that Defendants' emails violate CEMA by using a third party domain name without permission of the third party. FAC ¶¶ 4.2.1. However, Plaintiffs have never identified any email that used any third party domain name without permission of the third party. Summary judgment should be entered in Defendants' favor on this issue.

**3. Plaintiffs' attempt to create a disputed issue by inventing new requirements of CAN-SPAM or CEMA must fail.**

Plaintiffs contend that "there exists a question of material fact as to whether the bodies of thousands of Defendants' spam email messages contain any information at all, except for HTML code." (Response at 21:12-14). Plaintiffs thus imply that email messages in HTML format are somehow improper, and that HTML code does not constitute information for purposes of CAN-SPAM and CEMA. This argument suffers from at least three shortcomings, each of which is fatal to Plaintiffs' position.

First, the underlying contention, *i.e.*, that thousands of messages contain no information "except for HTML code," appears for the first time in this litigation in the affidavit of James

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

Gordon submitted in support of the Response. Gordon was questioned extensively at his deposition and in interrogatories regarding the basis for his claims, and *never* mentioned this purported issue. *See generally* Gordon Deposition, Dkt. No. 101. Even at this late date, Gordon fails to identify a single one of the supposed "thousands" of emails to which he refers. This general, self-serving allegation is insufficient to create a disputed issue. Foster, *supra*, 772 F.2d at 1462.

Second, and more significantly, Plaintiffs offer no authority whatsoever for the proposition that HTML emails are prohibited by CAN-SPAM (which they are not), or that CAN-SPAM requires that any or all information in an email be in plain text rather than HTML format (which it does not). Plaintiffs cannot create a disputed issue of material fact in this manner. Even if *all* of Defendants' emails contained *only* HTML code, they would not violate CAN-SPAM or CEMA, provided they otherwise complied with the requirements of those statutes. Plaintiffs do not, and cannot, point to any law or regulation that suggests otherwise, for their argument has no basis in law.

Third, the only evidence Plaintiffs cite to support this argument is a technical advisory from Microsoft dated November 8, 2005 (and therefore postdating most of the emails at issue in this lawsuit) (Ex. F to Gordon's Declaration in Support of Partial Summary Judgment, Dkt. No. 63-10) (the "Microsoft Bulletin"). The Microsoft Bulletin is offered for the truth of the matters asserted therein, and is therefore inadmissible hearsay under Federal Rules of Evidence 802. It is also simply irrelevant to any material fact in this action. A user who disables HTML in his email hardly has a basis to complain that he cannot see HTML text, any more than a user who sets his default font size to "8" has a basis to complain that he cannot read his emails because the text is too small. Plaintiffs' unsupported and novel theories regarding HTML emails do not constitute "specific facts showing that there is a genuine issue for trial" with respect to whether any of Defendants' emails contain false and misleading subject lines or fail to include a postal address. Defendants are therefore entitled to summary judgment on these issues.

///

///

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

**4. Plaintiffs' purported evidence pertaining to "unsubscribe" links is irrelevant, inadmissible hearsay.**

Plaintiffs contend that an issue of material fact exists with respect to "whether Defendants provided a working mechanism allowing recipients to opt out" of further emails. (Response at 20:13-15.) Plaintiffs do not, however, identify any emails at issue in this case that lack a working unsubscribe link. Instead, Plaintiffs point to approximately ninety letters of complaint, addressed to Defendants, which were provided to Plaintiffs by Defendants in discovery. The letters do not establish any violation of CAN-SPAM (even with respect to the authors) because it cannot be determined from the letters that the requirements of the Act were violated. The letters, which constitute every written complaint mailed to Defendants in history, represent an almost imperceptibly small percentage of emails sent by Defendants. If anything, they establish Defendants' compliance with CAN-SPAM rather than the contrary. Whichever way the sword might otherwise cut, the letters are inadmissible hearsay because Plaintiffs offer them to prove the truth of the matters asserted therein. The letters are also inadmissible because they are irrelevant; none pertains to any of the emails at issue in this lawsuit. Finally, as evidence of prior bad acts, the letters are inadmissible to prove that Defendants acted in conformity therewith pursuant to Federal Rules of Evidence Rule 404(b). Because the letters are inadmissible, and not probative of any violation, Plaintiffs have offered no specific facts showing any genuine issue for trial. Defendants are entitled to summary judgment on the issue of whether their emails contained working unsubscribe links.

**5. Plaintiffs fail to offer evidence that email was received ten days after an unsubscribe request made in the manner provided in an email.**

Plaintiffs next contend that "there also exists an issue of material fact as to whether Gordon opted out of receiving email from the Defendants." (Response at 21:17-19). In support of this contention, Plaintiffs point only to the inadmissible complaint letters described above and Gordon's (changed) deposition testimony (in which he claims to have clicked on unsubscribe links with respect to Virtumundo, but admits that he did not with respect to Adknowledge) (Ex. A to Gordon Declaration in Support of Response (Dkt. No. 107) at 3). This falls far short of meeting

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

Plaintiffs' burden. Section 7704(4)(a)(1) of the Act prohibits initiating transmission of an email to an address that has opted-out more than 10 days after the opt-out. In order to establish a violation of that section, a Plaintiff must show that he opted out using a mechanism provided in the email, that he never opted back in, and that he received an email from the same sender at that address more than 10 days after opting out.

In the instant action, Gordon cannot identify the date on which he claims to have opted out, nor the email address(es) from which he supposedly opted out, nor identify any email which he received at that address more than 10 days after that opt out. Gordon simply claims that he did, in fact, opt out, but acknowledges he has no evidence to support that claim. (Gordon Dep. 408:16-409:19.) ("Q: You didn't, however, retain any evidence of clicking on those links [opting out], correct? A: That's correct.") Even if Gordon could establish that he opted out, which he cannot, his argument is wholly undone by his admission that he may have subsequently opted in again. (Gordon Dep. at 461:10-462:19.) *See* 15 U.S.C. § 7704(a)(4)(B) (no obligation to refrain from sending emails after opt-out if there is affirmative consent by the recipient subsequent to the request).

Plaintiffs have not, and cannot, come close to meeting their burden on this issue. Plaintiffs simply cannot establish that Defendants initiated the transmission of a commercial electronic mail to a recipient who had previously opted out using a mechanism provided by the sender. Accordingly, Defendants' Motion should be granted as to this issue.

**6. Plaintiffs' "from name" argument is belied by the declaration of their own expert.**

Plaintiffs urge the Court to consider the Internet Engineering Task Force's "Request for Comment" (RFC) system even though it is irrelevant to any issue in this case. The Request for Comment system has no bearing on whether the "from" line of an email accurately identifies the sender for the purpose of CAN-SPAM. The Request for Comment system has no bearing on whether the "from" line of an email is false or misleading for the purpose of CEMA. In truth, Plaintiffs themselves now concede that RFCs "do not have the force of law" and only provide the "context that existed at the time Congress passed the CAN-SPAM act." (Response at 3:6-13).

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

Plaintiffs' own expert, Pete Resnick[1], testifies in his declaration that the RFC permits an email sender to provide no information at all in the "from name" field. In any event, Requests for Comments have no bearing on whether the emails in this case violate a statute. Plaintiffs have failed to produce specific evidence demonstrating any genuine issue for trial.

**C. Plaintiffs were not adversely affected by a violation of CAN-SPAM.**

Plaintiffs lack standing under CAN-SPAM unless they were adversely affected by a statutory violation. 15 U.S.C. § 7706(g)(1). The Motion establishes that Plaintiffs have not experienced any actual damages. Plaintiffs' Response alleges only that Plaintiffs were "forced to wade through thousands of e-mails sent by Defendants to locate legitimate e-mail" (Response at 17: l. 22-23).

The time and resources Gordon expended were exclusively directed toward litigation preparation rather than managing spam. *See, e.g.*, Gordon Declaration in Response and Opposition to Defendants' Motion to Compel Segregation of Emails, (Dkt. No. 78), ¶ 3 ("The job of collecting, sorting, and compiling records on this and other defendants is a very time-consuming process"). Mr. Gordon himself appears to be the proximate cause of this burden, since he invites others to send him tens of thousands of emails that have already been identified as spam. *See* id. ("my clients send me emails that are unsorted in lots of 10-50,000 at one time").

Plaintiffs actually benefit from spam, as Gordon admits. (Gordon Dep. 222:16-18). The only revenue Omni has ever received has been from spam litigation. (Gordon Dep. at 35:11-17.) Mr. Gordon describes himself as being in the "spam business" and has had no income other than settlements received from spam litigation for several years. (Gordon Dep. at 32:16-35:10.) One whose entire livelihood is based on spam litigation can hardly be said to suffer an "adverse affect"

---

[1] Defendants move to strike the Resnick declaration because Plaintiffs failed to identify Resnick as a witness, and Defendants consequently were denied the opportunity to cross-examine the witness. Additionally, his testimony is limited to a discussion of Requests for Comments, which are irrelevant to any material issue in this case.

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

from receiving spam.[2]

Sorting through spam in preparation for litigation cannot be what Congress had in mind when it chose to limit standing under the Act to providers of Internet access services adversely affected by violations of the Act. The Court should decline to condone this interpretation, and should hold that Plaintiffs lack standing to bring suit under the Act.

**D. Plaintiffs do not provide an Internet access service.**

Plaintiffs also lack standing because they do not provide an Internet access service. It is axiomatic that courts should decline to elevate form over substance when applying the law. *See, e.g.*, Escobedo v. Illinois, 378 U.S. 478, 486 (1964) (declining to "exalt form over substance" in determining the temporal scope of Sixth Amendment protections); Crowell v. Benson, 285 U.S. 22, 53 (1932) ("[R]egard must be had . . .not to mere matters of form but to the substance of what is required"); In re: CM Holdings, Inc., 301 F.3d 96, 102 (3d Cir. 2002) (In applying tax law, courts look beyond formal compliance with tax code and analyze fundamental substance of transactions). Here, Congress has made it clear that it intended to limit standing under CAN-SPAM to "bona fide Internet service provider(s)" providing "actual Internet access service to customers." 150 CONG. REC. E72 (attached as Exhibit M to Townsend Decl. in support of Motion for an Undertaking (Dkt. No. 41)). To that end, in presenting the bill eventually codified as CAN-SPAM to the House of Representatives, Hon. John D. Dingell stressed that "we intend that Internet access service providers provide *actual Internet access service to customers*."Id. (emphasis added). The question the Court must determine is whether Plaintiffs are among those to whom Congress intended to grant standing to sue under CAN-SPAM.

Neither plaintiff has ever held itself out to the public as a provider of Internet access services. Neither plaintiff has ever made any money providing such services. (Gordon Dep. at 32:16-35:17.) Neither plaintiff is in the business of providing such services. Gordon is in the "spam business", id., and "the purpose of Omni Innovations, LLC is to serve as a vehicle for the

[2] Defendants' motion to compel Plaintiffs to disclose the amounts of settlements received in spam litigation is currently pending (Dkt. No. 87.)

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

development and marketing of intellectual property" by Gordon. (Gordon Decl. in support of Response at ¶ 14.) Although Plaintiffs now submit self-serving declarations attesting to the various services they supposedly provide, Plaintiffs have previously demonstrated an almost total lack of understanding of those services. For instance, Plaintiffs testified that they do not even know the means by which their "clients" can access the Web and get their e-mail. (Gordon Dep. 212:13-213:12.) Plaintiffs themselves cannot articulate which services they provide and which are provided by GoDaddy, a domain name registrar and hosting company. (Gordon Dep. 473:13.)

Defendants suggested some common characteristics of Internet access services, such as having root access, providing a DNS server, and directly participating in the technical aspects of providing Internet services (as opposed to merely reselling). Under oath, Gordon either admitted he was not responsible for any of these tasks, or he did not know whether he had the ability to do them. In an effort to defeat this Motion, Gordon now contradicts his deposition testimony or explains he has since learned he can perform such technical functions (but not that he does). Defendants did not suggest these responsibilities were all that qualified an Internet access service. However, even if Gordon has since learned he has such ability, he never before performed the technical functions and they should not be considered when evaluating whether Plaintiffs qualify as an Internet access service. Plaintiffs do not provide an Internet access service. Rather, they hired GoDaddy to provide an Internet access service and Plaintiffs pass that service along to straw man "clients".

To permit those in Plaintiffs' position to bring claims under CAN-SPAM would eviscerate any limitation Congress intended to impose by declining to provide a cause of action to individual recipients of unsolicited commercial email. Congress intended for CAN-SPAM to provide a cause of action for those actually in the business of providing Internet access services to consumers, whose businesses are harmed by spam. It did not intend to provide a cause of action for opportunistic plaintiffs who do not actually provide services, but merely arrange them for the purpose of gaining standing under the Act. To allow Plaintiffs standing would be not only to elevate, but to exalt, form over substance. The Court should decline to do so.

///

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

**E. Plaintiffs fail to identify evidence indicating Scott Lynn is personally liable.**

Plaintiffs raise two novel theories with respect to Defendant Scott Lynn: 1) Lynn is liable for the acts of Virtumundo because he is listed as the administrative contact for domain names registered to Virtumundo; and 2) Lynn is liable for the acts of Virtumundo because he is its sole shareholder. Neither theory is supported by any authority, and both are devoid of merit.

Plaintiffs' suggestion that the person who serves as the administrative contact for a domain name is liable for the acts of the registrant will likely come as a surprise to GoDaddy, whose Domains By Proxy subsidiary is the administrative contact for the domain name <<ijusticelaw.com>>, which is registered to Plaintiffs' counsel. Plaintiffs' contention is analogous to a claim that the registered agent for a corporation is liable for the corporation's acts by virtue of serving in that capacity. This is obviously not the case. Plaintiffs' contention that a sole shareholder of a corporation is, by virtue of being such, liable for the acts of the corporation is contrary to the entire notion and existence of the corporate form. *See* Burnet v. Clark, 287 U.S. 410, 415 (1932). Plaintiffs' claims against Scott Lynn individually are frivolous, and summary judgment should be granted in Mr. Lynn's favor.

## III. CONCLUSION

Defendants' Motion presented evidence that Plaintiffs could not establish at least one required element of each of their claims. The burden then shifted to Plaintiffs to come forward with specific, admissible evidence to show that disputed issues of material fact remain for trial. Plaintiffs failed to do so. To the limited extent they attempt to defeat Defendants' arguments, their evidence is inadmissible, irrelevant, or unpersuasive, if not all three. Plaintiffs' claims should be dismissed and judgment should be entered in favor of all defendants.

DATED this 16th day of February, 2007.

**NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP**

By: ______________________
Derek A. Newman, No. 26967
Roger M. Townsend, No. 25525

**ADKNOWLEDGE, INC.**

By: /s/
Michael R. Geroe, General Counsel
*pro hac vice*

REPLY TO RESPONSE TO MOT. FOR SUMM. J.
CASE NO. CV06-0204C - 12

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800