The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| JAMES S. GORDON, Jr., a married individual, d/b/a 'GORDONWORKS.COM'; OMNI INNOVATIONS, LLC., a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>VIRTUMUNDO, INC, a Delaware corporation d/b/a ADNOWLEDGEMAIL.COM; ADKNOWLEDGE, INC., a Delaware corporation, d/b/a ADKNOWLEDGEMAIL.COM; SCOTT LYNN, an individual; and JOHN DOES, 1-X,<br><br>Defendants. | NO. CV06-0204JCC<br><br>**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>NOTE ON MOTION CALENDAR:<br>July 6, 2007 |

## I. INTRODUCTION

Pursuant to 15 U.S.C. § 7706(g)(4) and Wash. Rev. Code 19.190.090(3), Defendants hereby move the Court for an award and judgment in the amount of reasonable attorneys' fees and costs as the prevailing party in this litigation. For the reasons stated below, this Court should grant Defendants an award of reasonable attorneys' fees in the amount of $509,821.50 and costs in the amount of $32,213.01.

DEFENDANTS' MOTION FOR ATTORNEYS'
FEES AND COSTS
[NO. CV06-0204JCC] - Page 1

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## II. FACTS

**A.    Defendants Were the Prevailing Party in this Litigation.**

This Court granted summary judgment in favor of Defendants on all causes of action. (Dkt. #121, hereinafter, the "Order".)  The Court found that Defendants were the prevailing party in this litigation.  (Order at 24:23-24 ("As the prevailing parties, Defendants may file a motion for attorneys fees pursuant to 15 U.S.C. § 7706(g)(4)."); *see also* Order at 24:13 ("Defendants may move for attorneys' fees in light of this Order.")).  On June 6, 2007, the Court entered final judgment in favor of Defendants and dismissed all claims asserted by Plaintiffs. (Dkt. #122.)

**B.    The Rate and Hours of Attorneys' Fees Were Reasonable in Light of the Complexity of the Lawsuit**

Plaintiffs filed this lawsuit on February 9, 2006.  For a period of approximately sixteen (16) months, the parties actively engaged in pre-trial and trial preparation litigation.  The case was litigated through the discovery period, through dispositive motion practice, and past the initial trial date.

The parties exchanged extensive written discovery requests and produced substantial documents.  The parties conducted six depositions.  Plaintiffs James Gordon and Omni Innovations, LLC were deposed over a two day period.  Plaintiffs deposed Fed. R. Civ. P 30(b)(6) representatives of both corporate defendants and the individual defendant, all of which are located in Missouri or Kansas.  Defendants' counsel traveled to Kansas to defend those depositions.  Newman Decl. at ¶ 7.  Defendants traveled to Chicago, Illinois to depose Plaintiffs' expert witness, Pete Resnick.  Id.

Plaintiffs moved for partial summary judgment on December 18, 2006 and, for the first time, articulated that one basis for their claims was their novel "from" line theory. (Dkt. #53.) Defendants successfully opposed that dispositive motion.  On January 22, 2007, Defendants moved for summary judgment on all of Plaintiffs' claims.  (Dkt. #98.) Defendants prevailed on their motion for summary judgment and Judgment was entered in their favor.  Briefing on

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS
[NO. CV06-0204JCC] - Page 2

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

these motions were extensive and supported by numerous declarations with voluminous exhibits. (*See* Dkt. ##53-66; Dkt. ##82-89; Dkt. ## 98-109.) From the date Plaintiffs filed their motion for summary judgment on December 18 until all dispositive motions were fully briefed and ripe for the Court's consideration on February 16, 2007, Defendants' counsel was actively involved in dispositive motion briefing in this case. Newman Decl. at ¶ 5.

Plaintiffs asserted that more than 10,000[1] of Defendants' emails violated CAN-SPAM, the Washington CEMA and the Washington CPA. The defense in this litigation was complicated by Plaintiffs' tactical decision to withhold a theory of liability as applied to individual emails or categories of emails. Until their Motion for Summary Judgment (Dkt. #53), Plaintiffs refused to commit to any particular statutory provision which was allegedly violated. Accordingly, Defendants were required to employ a team of newly admitted lawyers to review the emails and analyze whether the emails violated any of the statutes' many provisions. This analysis (referred to in briefing as the "Linke Log") included columns for each of the many potential violations of the email statutes and an excerpt of the relevant fields as they applied to those potential violations (e.g., "to", "from", "subject line", transmission path" and "header information"). *See* Dkt. # 73, 102.) A reasonable hourly rate for the document analysis attorneys is $125.00 per hour. The document analysis attorneys devoted a reasonable 533.1 hours to the creation of the Linke Log. Newman Decl. at ¶ 4.

Subsequent to and concurrent with the dispositive motions in this case, the parties engaged in Fed. R. Civ. P. 39.1 mediation and trial preparation for the April 16, 2007 trial date. (*See* Dkt. 27.) Defendants filed various discovery motions, including a motion to compel Plaintiffs to produce and segregate the morass of produced emails (*See* Dkt. # 71 *et seq.*) and a motion to permit Defendants to depose Plaintiffs witnesses disclosed after the discovery cutoff. (*See* Dkt. # 116 *et seq.*) Each of these efforts were either required by Court order or were the reasonable expenditure of legal effort in the defense of Plaintiffs claims.

---

[1] 10,000 is a conservative estimate of the number of emails at issue in this case. Although Plaintiffs claimed 7,890 emails as the basis for their Motion for Summary Judgment (Dkt. #53), they produced over 30,000 emails total. *See* Defendants' Motion to Compel Segregation of Email Production (Dkt. #71).

Newman Decl. at ¶ 6.

Defendants were principally represented by Derek Newman and Roger Townsend. A reasonable rate for attorneys of similar experience, skill, background and knowledge in technology disputes is $350 per hour. Messrs. Newman and Townsend devoted a total of 552 hours to the defense in this litigation. Messrs. Newman and Townsend were supported by other lawyers throughout this litigation and efforts were made to have less expensive attorneys work on matters where appropriate. A reasonable rate for junior attorneys on this matter is $200 per hour. Junior attorneys devoted a total of 890.7 hours to the defense in this litigation. Newman Decl. at ¶ 3.

**C. Hourly Rates Were Reasonable Considering the Experience, Skill, and Reputation of the Attorneys**

Plaintiffs raised novel questions of law which had no precedent in this judicial district or the Ninth Circuit Court of Appeals. Plaintiffs' alleged violations were hyper-technical in nature and required counsel with familiarity with high-technology disputes and the contractual and technical relationships incidental to the Internet. Defendants were required to hire legal counsel familiar with the subject matter (*i.e.*, the Internet and email) and high-technology and intellectual property law disputes. Newman Decl. at ¶ 2.

The retail hourly rate for Defendants' attorneys ranged from $325.00 per hour for senior attorneys to $115.00 for junior attorneys. Defendants' retail rate was consistent with Newman & Newman, Attorneys at Law, LLP ("N&N") standard rates during the course of this litigation. Moreover, the retail rate is less than or consistent with prevailing hourly rates in the Seattle legal market for attorneys with comparable expertise, experience and skill. (*See* Declarations of Seth Wilkinson, Jessica Eaves Mathews, Spencer Freeman, Steven Hayes, and Eric Blank filed herewith (collectively, the "Prevailing Rate Declarations").) The reasonable rate for an experienced technology and intellectual property lawyer in the Seattle legal market is $350.00 an hour and the rate for a junior lawyer is $200 per hour. Id.

N&N has substantial experience defending actions under CAN-SPAM, the Washington CEMA and spam related lawsuits across the United States. In this district, N&N

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS
[NO. CV06-0204JCC] - Page 4

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

has represented defendants in numerous cases brought by Plaintiff Omni Innovations LLC. (*See e.g.*, Omni Innovations LLC v. Ascentive LLC et al., W.Dist.Wa. Case No. 2:06-cv-01284-TSZ; Omni Innovations LLC et al v. Smartbargains.com LP, W.Dist.Wa.; Case No. 2:06-cv-01129-JCC; Omni Innovations LLC et al v. Inviva Inc et al, W.Dist.Wa.; Case No. 2:06-cv-01537-JCC; Omni Innovations LLC et al v. BMG Music Publishing NA Inc et al, W.Dist.Wa., Case No. 2:06-cv-01350-JCC; Omni Innovations LLC v. Stamps.com Inc et al, W.Dist.Wa., Case No. 2:07-cv-00386-MJP). Additionally, N&N has represented defendants in cases brought by Joel Hodgell, another frequent anti-spam plaintiff represented by the same counsel as Omni Innovations in the present matter. For example, N&N represented Samson Distributing, Daniel Amato, EyeFive, Inc., DirectQlick, Acetech, Topica, Revenue Alley, Ride Marketing, and Savicom in several unrelated cases brought by Mr. Hodgell[2]. In one of those cases, Hodgell v. Amato, King County Dist. Court, Case No. Y2 1066, N&N's client was awarded attorneys' fees as the prevailing party. Similarly, N&N won a dismissal for Tandax in CAN-SPAM litigation brought in the United States District Court Western District of Oklahoma. Braver v. Ameriquest Mortgage Company, W.Dist. Ok, Case No. CIV-04-1013-W. N&N defended Samson Distributing in a lawsuit brought by AOL/TimeWarner in the Eastern District of Virginia. America Online, Inc. v. Samson Distributing, Inc., et al., E.Dist.Va., Case No. 03-473-A. Finally, N&N successfully won before the Supreme Court of Utah dismissal of an action under the Utah state spam law (which was similar to Washington's CEMA). Fenn v. Mleads Enters., 137 P.3d 706 (Utah 2006).

While N&N's standard rates are reasonable and consistent with the prevailing market

---

[2] See Hodgell, et al. v. Samson Distributing, et al., W.Dist.Wa, Case No. C02-2184Z; Hodgell v. Amato et al., King County Dist. Court, Case No. Y2 1066; Hodgell v. EyeFive, Inc., King County Super. Court, Case No. 04-2-01754-8 SEA; Hodgell v. Direct Qlick.com, Inc., King County Super. Court, Case No. 04-2-01755-6 SEA; Hodgell v. Bulk Marketing, Inc., et al.,King County Super. Court, Case No. 05-2-13730-4 SEA; Hodgell v. Memolink, Inc., et al., W.Dist.Wa., Case No. C02-2183Z; Hodgell v. Revenue Alley LLC, et al., King County Super. Court, Case No. 05-2-38340-2 SEA; Hodgell v. Ride Marketing Group, LLC, et al., King County Super. Court, Case No. 05-2-01930-1SEA; Hodgell v. Topica, et al., San Francisco County Super. Court, Case No. CGC-03-425317.

rate, they were discounted in the actual billing to Defendants. N&N regularly discounted Defendants' fees by striking entries of attorney time from monthly invoices. (Attached as Exhibit A to Newman Decl.) Accordingly, the effective rates for fees were considerably lower than the retail rate. To date, Defendants were billed $276,861.44 in attorneys' fees for 1,975.3 attorneys' hours expended.[3] Id. However, the amounts billed actually underestimate the reasonable attorneys fees in this case.

**D.  The Fees Expended Were Reasonable in Light of the Exposure to Defendants**

Plaintiffs sought at least $10,257,000.00 in statutory damages in their summary judgment motion in this litigation. (Dkt. #53.) The Court found as follows:

> Plaintiffs' partial summary judgment motion requests a total of $10,257,000 in statutory damages: $2,367,000 pursuant to CAN-SPAM and $7,890,000 pursuant to CEMA, which allows $1,000 per illegal e-mail. WASH. REV. CODE §§ 19.190.040(2).

Order at p.9, n.8. However, Plaintiffs only moved for *partial* summary judgment; the motion only sought relief based on allegations of fraudulent email header content. (Plaintiffs' Motion for Partial Summary Judgment, Dkt #53.)

In their First Amended Complaint (Dkt. #15 "FAC"), Plaintiffs alleged violations of more than a dozen different provisions carrying statutory damages. 15 U.S.C. § 7704(a)(1) ($100 for each email containing materially misleading header information); 15 U.S.C. § 7704(a)(2) ($25 for each email containing materially misleading subject lines); 15 U.S.C. § 7704(a)(3)(A) ($25 for each email lacking a functioning unsubscribe mechanism); 15 U.S.C. § 7704(a)(4)(A)(i) ($25 for each email sent in violation of previous unsubscribe request); 15 U.S.C. § 7704(a)(5)(A)(i) ($25 for each email lacking identification of email as advertisement); 15 U.S.C. § 7704(a)(5)(A)(ii) ($25 for each email lacking notice of opportunity to unsubscribe); 15 U.S.C. § 7704(a)(5)(A)(iii) ($25 for each email lacking the sender's postal address); Wash. Rev. Code 19.190.020(1)(a) ($1,000 for each email

---

[3] The aggregated effective hourly rate actually billed to Defendant in this litigation was $140.17 per hour. Defendants' lawyers billed approximately $276,861.44 for 1,975.3 hours of attorney time, equating to a blended rate of $140.17 per hour.

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS
[NO. CV06-0204JCC] - Page 6

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

containing misrepresented or obscured header information or using a third party's domain name without permission); Wash. Rev. Code 19.190.020(1)(b) ($1,000 for each email containing a misleading subject line); Wash. Rev. Code 19.190.080 ($5,000 for each email fraudulently soliciting personally identifying information); Wash. Rev. Code 19.170 *et seq.* (Uncertain amount of damages for deceptive advertising violations). Plaintiffs also alleged that Defendants committed acts in violation of 15 U.S.C. § 7704(b), which, if true, would permit a court to award treble damages of any award under CAN-SPAM. Finally, Plaintiffs claimed that all of the Washington State CEMA claims constituted violations of the Washington Consumer Protection Act, Wash. Rev. Code 19.86, *et seq.*, which also provides for treble damages.

Plaintiffs never articulated the precise nature or extent of their claimed damages, but the maximum recovery under the above statutory provisions and accounting for the availability of treble damages is *more than two hundred million dollars*. While it is implausible that a court would award $200,000,000 for commercial email violations, this figure is technically possible based on Plaintiffs' allegations and the sheer volume of the emails Plaintiffs produced. Considering that many of the statutory provisions at stake in this case had never been interpreted by any court, it is unquestionable that Defendants faced substantial legal exposure.

### E.  Defendants' Costs Were Reasonable.

Defendants expended costs in an amount of at least $26,338.01. These costs included: deposition costs ($10,383.70), Plaintiffs' expert witness's fee for his deposition in Chicago ($1,350.00), *pro hac vice* fee ($75.00), mediator fees ($2,759.37), telecommunications fees ($207.29), travel expenses for depositions out of the district ($2,343.32), photocopying expenses ($10,224.94), electronic legal research expenses ($1,010.20), mailing and messenger expenses ($485.54), and other costs. Each of the foregoing fees was necessary and reasonable in defending this lawsuit. Newman Decl. at ¶ 9.

Additionally, Defendants paid their expert witness, Neal Krawetz, Ph.D., a fee in the

amount of $5,875.00.  (Attached as Exhibit B to Newman Decl.)  An expert witness was necessary to rebut Plaintiffs' claims related to email headers and email protocol.  Defendants relied on the expert witness in bringing their successful motion for summary judgment.  *See e.g.,* Krawetz Decl. (Dkt. #99); Defendants' Motion for Summary Judgment (Dkt. # 98, *passim*).  Moreover, had this case proceeded to trial before a jury, Dr. Krawetz would have been necessary to explain the technical intricacies of email transmission to the jury.

### III. ARGUMENT AND AUTHORITY

**A.    The Determination of a Reasonable Attorneys' Fees Award**

CAN-SPAM and CEMA each provide for an award of attorneys' fees to the prevailing party. 15 U.S.C. § 7706(g)(4); Wash. Rev. Code 19.19.190(3).  In its order granting summary judgment, this Court invited Defendants to apply for attorneys' fees.  (Order at 24:23-24.)  Fed. R. Civ. P. 54(d)(2) provides for the application for attorneys' fees.  Defendants have timely applied for an award of attorneys' fees within 14 days of the Court's entry of judgment on June 6, 2007.  (*See* Dkt. #121.)

**B.    The Lodestar Analysis for Determining Reasonable Attorneys' Fees**

Attorneys' fees are awarded by the court under the lodestar approach from Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). The lodestar is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. Jordan v. Multnomah County, 799 F.2d 1262, 1265 (9th Cir. 1986).  Once the number of reasonable hours is determined, the court must set a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).  "*The most critical factor in determining the reasonableness of a fee award is the degree of success obtained.*" Farrar v. Hobby, 506 U.S. 103, 114, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992) (emphasis added) (quoting Hensley v. Eckerhart, supra).

The Ninth Circuit has held that the determination of a reasonable hourly rate "is not

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS
[NO. CV06-0204JCC] - Page 8

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

made by reference to the rates actually charged the prevailing party." *See, e.g.*, <u>Mendenhall v. Nat'l Transp. Safety Bd.</u>, 213 F.3d 464, 471 (9th Cir. 2000) (quoting <u>Chalmers</u>, 796 F.2d at 1210). Rather, billing rates "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." <u>Davis v. City of San Francisco</u>, 976 F.2d 1536, 1545 (9th Cir. 1992); *see also* <u>Carson v. Billings Police Dep't</u>, 470 F.3d 889, 892 (9th Cir. 2006) (holding that the prevailing market rate -- not the individual contract between the applicant attorney and the client -- "provides the standard for lodestar calculations").

Defendants submit that reasonable hourly rates in the present matter are $350 per hour for managing attorneys, $200 for associate attorneys, and $125 for document analysis attorneys. *See* Prevailing Rate Declarations. <u>Davis v. City of San Francisco</u>, 976 F.2d 1536 (9th Cir. 1992) ("[D]eclarations of the prevailing market rate in the relevant community . . . [are] sufficient to establish the appropriate [billing] rate for lodestar purposes.").

Courts in this district have found that significantly higher legal hourly rates are recoverable in cases of similar complexity and sophistication. In comparable technology cases, this district has awarded fees up to $650 per hour. *See* <u>Eon-Net, L.P. v. Flagstar Bancorp, Inc.</u>, 2006 U.S. Dist. LEXIS 91735 (W.D. Wash. 2006) (approving fees as high as $650 per hour in patent dispute despite non-moving party's assertion that "reasonably competent" patent litigation counsel could have been obtained for $ 138.20 per hour); *see also* <u>Derek Andrew, Inc. v. Poof Apparel Corp.</u>, 2006 U.S. Dist. LEXIS 92710 (W.D. Wash. 2006) (approving fees in the amount of $450 per hour in trademark dispute); <u>Twentieth Century Fox Film Corp. v. Dastar Corp.</u>, 2000 U.S. Dist. LEXIS 22064 (C.D. Cal. 2000), *aff'd*, *rev'd*, *vacated*, *remanded sub nom by* <u>Twentieth Century Fox Film Corp. v. Entm't Distrib.</u>, 34 Fed. Appx. 312, 315 (9th Cir. 2002), *rev'd on other grounds*, <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003) (approving of fees ranging between $295 - $475 in 2000 copyright dispute); <u>Velez v. Wynne</u>, 2007 U.S. App. LEXIS 2194 (9th Cir. 2007) (finding abuse of discretion by district court in not awarding $475 hourly rate for complex employment litigation where opposition did not establish that rate was

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS
[NO. CV06-0204JCC] - Page 9

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  unreasonable); Freitag v. California Dep't of Corr., 2003 U.S. Dist. LEXIS 26579 (N.D. Cal.
2  2003) (finding that $400 per hour was a reasonable rate in 2003).  Based upon existing
3  findings in this Circuit, Defendants' asserted reasonable rate for attorneys' fees of $350 per
4  hour for managing attorneys and $200 for associates is *actually below* the prevailing market
5  rate for legal counsel in high-technology and intellectual property matters.

**C.    The Lodestar Amount should be Increased by this Court**

The district court may adjust the presumptive lodestar award upward or downward using a multiplier based on twelve factors not included in the initial lodestar calculation. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000); McGrath v. County of Nevada, 67 F.3d 248, 252 & n.4 (9th Cir. 1995); Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988). The twelve factors the Court considers when adjusting the lodestar amount are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. at 252 n.4 (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

The twelve factors for determining reasonable fees support an increase in the attorneys' fees award to Defendants.  It has already been determined that Defendants were the prevailing party on all claims in this litigation. According, the "most critical factor" weighs heavily in favor of defendants. Farrar v. Hobby, 506 U.S. 103, 114, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992) (quoting Hensley v. Eckerhart, supra).

Furthermore, the remaining eleven factors also support increasing fees above the amounts actually billed to Defendants.  The novelty and difficulty of the questions involved as well as the technical knowledge required to perform the legal service properly, all support a higher hourly rate.  Finally, the circumstances of the litigation warrant an increase in

DEFENDANTS' MOTION FOR ATTORNEYS'
FEES AND COSTS
[NO. CV06-0204JCC] - Page 10

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

determining reasonable attorneys' fees. Plaintiffs sought damages far in excess of $10,000,000 and the litigation effectively challenged the legitimacy of Defendants' business operations. Had Plaintiffs prevailed in this litigation, then other plaintiffs would have rushed to file against Defendants, and Defendant's business would have been in jeopardy. The attorneys' fees as-billed represent a small fraction of the asserted exposure to Defendants. In light of the importance of this litigation to Defendants, reasonable attorneys' fees should be increased 20% from the presumptive lodestar rate.

### D.   Standards for Costs

Fed. R. Civ. P 54(d)(1) provides as follows:

> <u>Costs Other than Attorneys' Fees</u>. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees <u>shall be allowed as of course</u> to the prevailing party unless the court otherwise directs.

(Emphasis added.) Deposition costs, service of process fees, witness fees, travel expenses, photocopying expenses, electronic legal research expenses, messenger/courier expenses, clerk fees and other costs are routinely awarded as recoverable costs under 28 U.S.C. § 1920 and Fed. R. Civ. P 54(d)(1). *See* <u>GT Dev. Corp. v. Temco Metal Prods. Co.</u>, 2005 U.S. Dist. LEXIS 37501 (W.D. Wash. 2005). Defendants' costs in the amount of $26,338.01 are reasonable and recoverable.

Additionally, Defendants seek an award that includes their expert witness fees in the amount of $5,875. Washington law provides for recovery of expert witness fees under RCW 19.86. <u>Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.</u>, 26 P.3d 910, 917 (Wash. 2001) (holding that it was an error to not award expert witness fees and other expenses necessary to fully compensate the prevailing party.)

Defendants' retention of an expert witness was essential in this case. Defendants retained the services of an expert witness with knowledge, skill, training and experience in the behind-the-scenes operation of email transmission and standards and practices in the industry. Defendants' expert witness report was relied upon in Defendants' successful motion for

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS
[NO. CV06-0204JCC] - Page 11

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  summary judgment. (*See* Dkt. # 99.) Had this case gone to trial, it would have been before a
2  jury (*see* Dkt. #114) who would have relied upon the opinions of competing experts to
3  determine the appropriate standards and practices for transmission of email. This area of
4  knowledge is outside of the common understanding of a jury and, for this reason, expert
5  witness testimony was necessary in this case.

### IV. CONCLUSION

Applying the lodestar calculation to the present matter, defendants should be awarded a fee at the prevailing market rate of $350 per hour for senior attorneys and $200 for junior attorneys. At a rate of $350 per hour for senior attorneys (Newman & Townsend) and $200 for junior attorneys (all other attorneys), and $125 per hour for document analysis attorneys, aggregated reasonable attorneys' fees amount to $424,851.25.

Furthermore, due to the technical nature of the case, Defendants' success and the significant exposure to Defendants in this litigation, the reasonable attorneys' fees awarded to defendants should be increased by 20% to $509,821.50.

Finally, Defendants should be awarded costs in the amount of $32,213.01 pursuant to Fed. R. Civ. P. 54(d)(1). Therefore, Defendants should be awarded a total of $542,034.51 for attorneys fees and costs.

DATED this 19th day of June, 2007.

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

By: _____
Derek A. Newman, WSBA No. 26967
Roger M. Townsend, WSBA No. 25525

Attorneys for Defendants

DEFENDANTS' MOTION FOR ATTORNEYS'
FEES AND COSTS
[NO. CV06-0204JCC] - Page 12

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800